616 So.2d 313 (1993)
Victor HURNS
v.
STATE of Mississippi.
No. 90-KA-1068.
Supreme Court of Mississippi.
April 1, 1993.
*314 Boyd P. Atkinson, Cleveland, Thomas H. Pearson, Clarksdale, for appellant.
Michael C. Moore, Atty. Gen., Jackson, Charles W. Maris, Jr., Special Asst. Atty. Gen., Jackson, for appellee.
Before PRATHER, P.J., and PITTMAN and SMITH, JJ.
SMITH, Justice, for the court:
On October 25, 1989, the grand jury of Bolivar County, Mississippi, indicted the appellant, Victor Hurns, along with Derrick Lowery and Eddie Lee Robinson for capital murder in connection with the June 25, 1989, death of Robert Anderson. Victor Hurns was arraigned on November 20, 1989. One of the co-defendants requested and was granted a continuance on December 7, 1989. Hurns, pro se, filed a motion to dismiss for failure to provide a speedy trial, on December 28, 1989.
The trial court on January 8, 1990, acting on a motion, granted severance to the co-defendants. On February 22, 1990, Robinson's case went to trial first and Hurns, pursuant to his request, was allowed by the trial court to attend the proceeding. On April 2, 1990, Hurns filed another motion to dismiss, alleging speedy trial grounds. The motion was denied.
Hurns was re-indicted on April 24, 1990. He filed another motion to dismiss on speedy trial grounds, which the lower court dismissed and his trial commenced May 28, 1990. At the conclusion of the State's case-in-chief, Hurns moved to dismiss the capital portion of the case alleging the State had failed to prove that the victim's death occurred as a result of actions taken during the commission of a sexual battery. The lower court agreed and allowed the case to proceed to the jury on simple murder. Hurns was found guilty of murder by the jury, and the lower court entered judgment against Hurns finding him to be an habitual offender and sentenced him to life without possibility of parole under Miss. Code Ann. § 99-19-81 (Supp. 1990), with his custody given to the Mississippi Department of Corrections. Aggrieved by the trial court judgment, Hurns appeals to this Court alleging the following assigned errors for review:
I. THE TRIAL COURT ERRED IN DENYING THE DEFENDANT'S MOTION TO DISMISS THE INDICTMENT SINCE THE STATE OF MISSISSIPPI VIOLATED THE DEFENDANT'S RIGHT TO A SPEEDY TRIAL.
II. THE TRIAL COURT COMMITTED ERROR IN THAT IT FAILED TO SUSTAIN A DEFENSE MOTION TO DISALLOW THE INTRODUCTION OF GRUESOME, HIGHLY PREJUDICIAL PICTURES OF THE DECEASED THEREBY DENYING THE DEFENDANT A FAIR TRIAL.
III. THE TRIAL COURT ERRED IN THAT IT FAILED TO GRANT DEFENDANT'S JURY INSTRUCTION D-3, A CULPABLE NEGLIGENCE MANSLAUGHTER INSTRUCTION.
IV. THE TRIAL COURT ERRED IN OVERRULING THE DEFENSE MOTION TO DISMISS THE CHARGE OF MURDER AND RELEASE THE JURY PANEL BECAUSE THE EVIDENCE OF THE UNDERLYING FELONY CHARGE OF SEXUAL BATTERY HAD BEEN RECEIVED PRIOR TO THE TRIAL COURT REDUCING THE CAPITAL MURDER INDICTMENT TO MURDER THEREBY PREJUDICING THE JURY AND DENYING THE DEFENDANT A FAIR TRIAL.

*315 FACTS

The only undisputed fact in this case is that Robert Anderson, a prisoner in the Bolivar County Jail in Cleveland, Mississippi, was found dead in his cell on Sunday morning, June 25, 1989, at approximately 8:00 a.m. The body was removed by the county coroner and a sheriff's deputy and taken to Jackson, Mississippi, where it was examined by Dr. Steven Hayne, a pathologist. Dr. Hayne observed significant lesions over the face, back, left arm, the back of both hands and on both feet of Anderson's body. There were multiple abrasions over the left side of Anderson's neck, contusions predominantly on the left arm and forearm and hematomas around both eyes.
Dr. Hayne removed the skull cap, and found the immediate cause of Anderson's death to be massive injuries or trauma to the brain. He found hemorrhage as well as multiple contusions to the left side of the brain which would induce death. Dr. Hayne concluded that the deceased had received multiple blows over a relatively short period of time from an unknown object, but he excluded wood or metal objects as possible causes of death.
During Dr. Hayne's testimony, the State sought to introduce exhibit S-11, a photograph of Anderson's head with the skin pulled back and the skull cap removed, which showed the brain and a large amount of blood present within the skull and the brain tissue. Hurns' counsel objected that the photograph should not be exhibited to the jury on the ground that "the type of picture outweighs the probative value of it." The court found the probative value of the photograph to outweigh any prejudicial effect and allowed the photographs to be submitted to the jury.
Dr. Hayne further testified that the blow or blows inducing the contusions to the brain and the bruising of the left side of the brain would have rendered the decedent unconscious in a short period of time, probably at the time of the infliction of the injury, if not, shortly thereafter within minutes, even seconds.
The State's case-in-chief consisted of the testimony of six of Anderson's and Hurns' fellow inmates at the Bolivar County Jail. With some variation, they all testified that the events leading to Anderson's death began after the supper meal on June 24, 1992, at approximately 5:00 p.m.
They all testified that Hurns led a group on the east side of the jail known as the "posse." This group terrorized prisoners in their wing of the jail. They further testified that Hurns, Derrick Lowery, and Eddie Lee Robinson were the leaders of the "posse." The testimony further revealed that when minor infractions occurred or disobedience of the commands of the "posse" were brought to the attention of Hurns, trials were held for the inmates committing such infractions. Hurns served as the judge, with Lowery serving as the prosecutor, and other members of the "posse" serving as jurors and being responsible for meting out punishment. The principal method of punishment once a prisoner was "convicted" was a "blanket party." A "blanket party" consisted of placing a blanket over the convicted inmate; the other inmates would then beat and kick the covered inmate.
Hurns ordered the two weakest inmates of the group, Robert Anderson and M.C. Robinson, to fight since Anderson was going to Parchman and needed to be toughened up, because he could expect rough treatment there as a convicted sex offender. Anderson was the weaker of the two inmates. The testimony of the State's witnesses revealed that the two fought several times with Robinson winning each fight. Upon the conclusion of each fight, Hurns ordered Anderson to receive a "blanket party" as punishment for losing. The proof further showed that from three to five "blanket parties" were given Anderson on the evening in question.
The first witness offered by the State was Anthony Keeton, who testified that at Anderson's last "blanket party," Anderson was standing in the middle of cell four when Hurns jumped off the top of a bunk bed and hit him on the top of his head with an elbow. He further testified that *316 Anderson got up a couple of times and Hurns continued the same treatment each time, with the final blow making Anderson fall on the concrete floor. Anderson could not get up after this final blow, and Hurns and Lowery picked him up and dragged him back to his cell and left him lying on the floor. Keeton testified that between the "blanket parties" Robinson had been forced to perform oral sex on Anderson. Keeton further testified that Hurns hit Anderson harder and more often than anyone else participating in the incident.
Leroy Perry testified next for the State. He testified that Hurns was the "chief head man" of the "posse" and that Hurns had become very upset two days before this incident when he had been sentenced. When he returned to his cell from sentencing, Hurns said, "Somebody must die." Hurns gave Perry the option of receiving a "blanket party" or fighting Anderson. Perry admitted that he was a member of the "posse," but only because he had to be. He admitted hitting Anderson during the "blanket parties," but claimed that he did not hit him as hard as he could. Perry further testified that he saw Hurns jump off the bed in cell four and hit Anderson in the head with his knee and that Anderson just lay there on the floor, face down and shaking. He further testified that he observed Hurns and Derrick Lowery take Anderson to his cell and lay him on the concrete floor. Finally, Perry testified that, during the final "blanket party," Eddie Lee Robinson grabbed Anderson and forced his head into the wall four or five times.
The next State witness was Mark Ferretti. Ferretti testified that when the "blanket parties" were held, fifteen to twenty people would all crowd into cell four, because that was the only cell in the jail that was not monitored by a camera. Ferretti testified that on Friday, June 23rd, and Saturday, June 24th, "they" made M.C. Robinson and Anderson fight many times. He further testified that Hurns chose who got the "blanket parties." After each fight, they brought Anderson to cell four for a "blanket party." Ferretti said that Anderson was forced to have sex with eight to nine other people. He did see Hurns hit Anderson with an elbow. After Anderson was found dead, Ferretti heard Hurns tell inmates that they needed to make up and report a story that M.C. and Anderson must have gotten into another fight that night after lockdown, as they were in the same cell.
Cedric Coleman was called by the State and testified basically to the same facts relating to the "posse" and "blanket parties" as other inmates had. He testified that Hurns forced Anderson and M.C. Robinson to fight and that Anderson received three to four "blanket parties" that night. Further, Anderson was forced by Hurns to perform oral sex on Leroy Perry and Willie Drummer. Coleman stated that at the last "blanket party" he saw Hurns hit Anderson once in the back and once with his elbow when he dropped down on him like a wrestler. He further testified that Hurns put all the inmates up to the story about M.C. Robinson and Anderson fighting.
The next witness for the State was Roosevelt Hunter. Hunter testified that Anderson received four to five "blanket parties" on June 24, 1989. Hunter testified that at the last "blanket party" when Anderson went down on the floor, Hurns began constantly dropping elbows on him just as in wrestling. He saw one blow hit Anderson on the back of the neck. Hunter further noticed that Anderson was breathing loudly. Hunter also testified that Hurns told the others to tell the investigators that Anderson and M.C. Robinson fought all night. Finally, Hunter stated that he saw Eddie Lee Robinson bump Anderson's head into the iron rail of the bed.
Stevoris Franklin testified about the "posse" and Hurns' domination of the jail. He stated that Anderson received three or four "blanket parties" that night, and admitted hitting Anderson himself. He remembered Hurns jumping off of the top bunk and hitting Anderson with his forearm while Anderson lay on the floor on his back. Franklin stated that Anderson started foaming and bleeding out of the mouth *317 and shaking and that Anderson never got up after that. Franklin remembered Eddie Lee Robinson ramming Anderson's head into the bars. He remembered Hurns and Lowery dragging Anderson back to his cell about thirty minutes before lockdown. Franklin and Coleman put Anderson in his bunk lying on his back, and the next morning they found Anderson swollen and changing colors. He further confirmed that Hurns told everyone to say that M.C. Robinson was responsible. He admitted that he had given two different versions through his statements, but stated that he told the truth after Hurns was removed from the jail.
In an attempt to show that the fatal blow or blows could not be traced to Hurns' actions and that neither Hurns nor any of the other inmates had the intent to kill, the defense called Ricky Haywood, the jailer. Haywood testified that he made roll call the morning following the fight at 6:00 or 6:15 a.m. He testified that as he passed by Anderson's cell, he reached into the cell and touched Anderson's feet, and Anderson responded by moving them. He testified that he woke M.C. Robinson and asked him what had happened and M.C. stuttered in response. Haywood stated that Clinton Burns was standing up and told him that M.C. Robinson and Anderson had been fighting.
Clinton Burns, also an inmate at the jail, shared a cell with Anderson, Earnest Walker, Jr., and M.C. Robinson. Burns testified that he was in the cell about thirty minutes before lockdown on June 24, 1989, when Hurns dragged Anderson into the cell and told him to keep a rag to Anderson's face. Burns stated that he sat beside Anderson all night and that he could see "old brown stuff" running out of his mouth all night. He tried to call to Anderson but he would not respond. He admitted that he gave a statement to Deputy Estes that M.C. had been choking Anderson during the night but explained that he made the statement because he was afraid of Hurns. On cross-examination, Burns stated he remembered Hurns saying that they had to make up a story but did not remember the details of the story.
David Comfort, a trusty at the jail on June 24 and 25, 1989, was called by the defense to testify. He testified that five minutes before lockdown that night he had a conversation with Anderson about a special visitor Anderson was expecting the next day. He further testified that he saw Haywood touch Anderson's feet and his feet moved. He stated that only M.C. Robinson and Anderson were in the cell on the morning of June 25th and he later heard M.C. hollering that "he was sorry and that he did not do it."

DISCUSSION

I.
Hurns' principal contention is that the State violated his constitutional right to a speedy trial, although he also mentions in passing the statutory 270-day rule. The response of the State is that under the factors of Barker v. Wingo, 407 U.S. 514, 92 S.Ct. 2182, 33 L.Ed.2d 101 (1972), the delay was not unreasonable. Where a violation of the constitutional right to a speedy trial is alleged as in the case at bar, the controlling case is Barker.
In Barker we find the four pronged test which provides the framework for analysis of constitutional issues pertaining to speedy trials. This Court must consider: (1) the length of delay, (2) reason for the delay, (3) defendant's assertion of his right and finally, (4) prejudice to the defendant.

A. Length of the delay
An examination of the trial record reveals that Hurns was arrested for this crime on June 28, 1989, and trial began on May 28, 1990. The length of the delay is calculated accordingly at 334 days. Obviously this places the delay in this case at over the eight months which this Court has found presumptively prejudicial under Flores v. State, 574 So.2d 1314 (Miss. 1990). See also Smith v. State, 550 So.2d 406 (Miss. 1989). However, presumptive prejudice alone is insufficient to allow the defendant to prevail on speedy trial grounds. Doggett v. United States, 505 U.S. ___, ___, 112 S.Ct. 2686, 2693, 120 L.Ed.2d 520, *318 531 (1992). This first step under Barker acts as a "triggering mechanism." Spencer v. State, 592 So.2d 1382, 1387 (Miss. 1991); Smith v. State, 550 So.2d 406, 408 (Miss. 1989). If the delay is not presumptively prejudicial there is no need for further inquiry under Barker. Spencer, 592 So.2d at 1387. Finding the delay of 334 days presumptively prejudicial, we inquire into the other Barker factors.

B. Reason for the delay
Hurns claims the delay was "a deliberate attempt by the state to cause a delay to hamper the defendant's ability to prepare as [sic] defense." In rebuttal, the State claims that the delay was caused by several facts: the court had only two-terms per year; the case originally involved three defendants and one requested a continuance; a severance was granted; one co-defendant was tried before Hurns with Hurns requesting to be present; and Hurns was re-indicted because of an alleged defect in the indictment. This Court has held that the actions of a co-defendant which cause delay should not be held against another defendant. Flores, 574 So.2d at 1321. There will be a certain amount of delay for discovery purposes in most cases and this case is no exception. The fact that only two court terms per year are held is a neutral reason for the delay. These represent delays which are neither unexpected nor excessive. In Barker, the Court made it clear that different weights are to be assigned to different reasons for delay. Barker, 407 U.S. at 531, 92 S.Ct. at 2192, 33 L.Ed.2d at 117. See Doggett, 505 U.S. at ___, 112 S.Ct. at 2693, 120 L.Ed.2d at 531. Overall, however, this prong of the test avails Hurns little, as most of the delay seems attributable to ordinary lag from crowded dockets and court terms in the Bolivar County Circuit Court.

C. Defendant's assertion of the right
Hurns filed a pro se motion to dismiss for denial of his right to a speedy trial on December 28, 1989, and additional motions were filed by his counsel on April 2, 1990, and May 17, 1990. They are the sole assertions of the right to a speedy trial. Hurns' pro se motion should have been sufficient to place the State on notice that Hurns was asserting his right to a speedy trial. Hurns was extremely experienced with the criminal justice system and it is conceivable that he realized six months had passed and that the delay was about to become presumptively prejudicial. This factor should be weighed against the State.

D. Prejudice to the Defendant
The Court in Barker stated:
Prejudice, of course, should be assessed in the light of the interests of defendants which the speedy trial right was designed to protect. This Court has identified three such interests: (i) to prevent oppressive pretrial incarceration; (ii) to minimize anxiety and concern of the accused; and (iii) to limit the possibility that the defense will be impaired. Of these, the most serious is the last, because the inability of a defendant adequately to prepare his case skews the fairness of the entire system.
Barker v. Wingo, 407 U.S. at 532, 92 S.Ct. at 2193, 33 L.Ed.2d at 118 (1972).
Hurns maintained that he had increased anxiety due to the delay. The fact that he was already incarcerated takes out subpart (i). Hurns does not even attempt to show particularized prejudice, and none is self-evident from the record, taking out subpart (iii). It is conceivable that Hurns may have suffered increased "anxiety" due to the fact that this was a death penalty case. All factors considered, this prong of Barker weighs in favor of the State.
Overall, Hurns' right to a speedy trial seems to have been respected. More importantly, this Court finds that Hurns has not even attempted to show any prejudice from the record because none exists. The reasons for the delay are mostly neutral as the result of overcrowded court dockets and trial schedules. As in Barker this was no ordinary street crime but one with very serious complex circumstances. Hurns alludes to an alleged violation of the 270 day rule under Miss. Code Ann. § 99-17-1 (Supp. 1990). However, from the date of his original arraignment on November 20, *319 1989, to time of trial, we find the time to be less than 270 days.
This issue has no merit.

II.
The next issue is whether the lower court committed error in failing to sustain a defense motion to disallow the introduction of alleged gruesome, highly prejudicial pictures of the deceased which denied Hurns a fair trial. It is well settled that admission of photographs into evidence rests within the sound discretion of the trial court. Ladner v. State, 584 So.2d 743, 753-54 (Miss. 1991) (cert den. ___ U.S. ___, 112 S.Ct. 663, 116 L.Ed.2d 754) (citing Marks v. State, 532 So.2d 976, 980 (Miss. 1988); McFee v. State, 511 So.2d 130, 134-35 (Miss. 1987)).
Additionally, the trial court, as well as the appellate court on review, must look at Mississippi Rule of Evidence 403 which states: "[A]lthough relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence." This is the proper criteria for the trial court to consider in making its decision whether to admit photographs or not. Hurns contends the lower court abused its discretion in applying Rule 403, citing Sudduth v. State, 562 So.2d 67 (Miss. 1990). In Sudduth, this Court held that photographs of a murder victim should not ordinarily be admitted where the "killing is not contradicted or denied, and the corpus delicti and identity of victim have been established." Id. at 70 (citing Davis v. State, 551 So.2d 165, 173; Shearer v. State, 423 So.2d 824, 827 (Miss. 1982)).
The Court in Sudduth, however, went on to say that photographs of bodies may nevertheless be admitted into evidence in criminal cases where they have probative value and where they are not so gruesome or used in such a way as to be overly prejudicial or inflammatory. Davis, 551 So.2d at 173; Griffin v. State, 504 So.2d 186, 191 (Miss. 1987); Miss.R.Evid. 403; Sudduth, 562 So.2d at 70. In the case at bar, the photo in question, State's exhibit 11, may indeed appear somewhat gruesome, but the photo clearly had probative value in that it served to illustrate to the jury the exact extent of the damage which caused Anderson's death. Bearing in mind that Hurns attempted to show that the cause of death could not be attributed to a single blow or numerous blows, and since different individuals participated in striking the deceased, it would be extremely difficult to single out Hurns alone as creating the blow or blows which caused the death of Anderson. The photograph was not introduced in an inflammatory manner but instead was introduced during Dr. Hayne's explanation to the jury in scientific terms the cause of death. The photograph clearly corroborates the testimony of Dr. Hayne that a blow or blows to the head resulted in the death of Anderson. Additionally, this Court finds that Dr. Hayne's explanation is certainly corroborated by consistent testimony from numerous witnesses who observed the scenario within cell four on the date and time in question. The witnesses stated that Hurns jumped from top of a bunk bed on several occasions in wrestling-like fashion striking the top of the head and other portions of the Anderson's head. The only other testimony in the record about a blow or blows to the head alleges that such blows were caused by Eddie Lee Robinson, an original co-indictee of Hurns.
This Court is mindful, however, that the photograph in question is an autopsy photograph and that prosecutors should be forewarned about the use of and reliance upon such photographs. Few autopsy photographs will meet the criteria of containing more probative value, as compared to being unfairly prejudicial or inflammatory, or overly gruesome. However, it is clear in this case, and this Court finds, that the photograph in question had greater probative value when compared to its gruesome nature, and was not used in an overly prejudicial or inflammatory manner. Alexander v. State, 610 So.2d 320 (Miss. 1992) (autopsy photo of victim's open skull admissible to show cause of death as severe beating); *320 Mackbee v. State, 575 So.2d 16 (Miss. 1990) (autopsy photo of victim's trachea admissible to show death from smoke inhalation); Marks v. State, 532 So.2d 976 (Miss. 1988) (nude autopsy photos admissible to show number and placement of wounds and the extent of force and violence used). The lower court did not abuse its discretion in allowing the jury to consider this photograph as evidence. The suggested error by Hurns is rejected, there being no merit to this issue.

III.
Hurns contends that the lower court erred in refusing to grant instruction D-3, a culpable negligence manslaughter instruction.
When the State rested its case-in-chief, Hurns promptly moved the court that the capital portion of the case against him be dismissed because the evidence did not show that the killing was committed during the course of the sexual battery. The lower court agreed and stated that the instructions would have to be redrawn to reflect that the case could only be tried as murder, rather than capital murder. The defense requested and the court informed the jury that the case was no longer a capital case and the death penalty no longer a possibility.
Hurns requested the court to grant instruction D-3, which read as follows:
The Court instructs the jury that the killing of a human being by the culpable negligence of another, without authority of law, is manslaughter, and the Court further charges the jury that culpable negligence is such negligence as evinces a flagrant and reckless disregard for the safety of others, or wilful indifferences to the injury liable to follow.
If you believe beyond a reasonable doubt from the evidence in this case that the deaths [sic] of Robert Anderson, Jr., was caused by the culpable negligence of Victor Hurns, while Hurns was engaged in the commission of an assault upon Robert Anderson, Jr., then you shall find the Defendant guilty of the crime of manslaughter.
Neither party cites Miss. Code Ann. § 97-3-47 (1972). This is the section of the code covering culpable negligence manslaughter. It provides a much simpler and more appropriate manner of approaching this issue now before the Court. It reads: "[e]very other killing of a human being, by the act, procurement, or culpable negligence of another, and without authority of law, not provided for in this title, shall be manslaughter." By its own terms, the section applies only when the other provisions of Chapter 97, Title 3 do not. The State points out that the evidence must be sufficient to support the jury's finding of guilt under a lesser offense in order to support the granting of an instruction. See Berry v. State, 575 So.2d 1 (Miss. 1990); Gangl v. State, 539 So.2d 132 (Miss. 1989).
Stated from a defense perspective, the Court has often held that a defendant is entitled to an instruction on his theory of the case where it is supported by the evidence and correctly states the law. Hester v. State, 602 So.2d 869 (Miss. 1992). Thus, an instruction in this case would have been proper only if the court had found that the evidence would support a finding by the jury that the defendant was guilty either of culpable negligence manslaughter or of the greater crime charged.
Ultimately the State requested that the jury be instructed on murder under Miss. Code Ann. § 97-3-19(1)(b) (Supp. 1990):
(1) The killing of a human being without the authority of law by any means or in any manner shall be murder in the following cases:
.....
(b) When done in the commission of an act eminently dangerous to others and evincing a depraved heart, regardless of human life, although without any premeditated design to effect the death of any particular individual.
Culpable negligence is defined in Miss. Code Ann. § 97-3-47 (1972) as "negligence of a degree so gross as to be tantamount to a wanton disregard of, or utter indifference to, the safety of human life." This crime requires, and should, a much lesser showing *321 of culpability than that required by the depraved heart murder section. This Court has noted that prior cases for all practical purposes coalesced the two murder statutes so that § 97-3-19(1)(b), the depraved heart statute, subsumes (1)(a), the deliberate design statute. Mallett v. State, 606 So.2d 1092, 1095 (Miss. 1992).
The evidence in this case shows intentional, not negligent, acts committed by Hurns. The evidence does not support a finding that Hurns possessed only the lesser degree of culpability covered by the culpable negligence statute. We hold that the lower court correctly refused to grant instruction D-3. This issue is totally without merit.

IV.
Hurns contends that the lower court erred in allowing the trial to continue on a murder charge after the jury had received evidence of the underlying felony charge of sexual battery pertaining to the original capital murder indictment. As a result of this alleged error, Hurns contends the jury was prejudiced and he was denied a fair trial.
The defense merely asked that the jury be instructed that the case was no longer capital and that the death penalty would not be considered. The court instructed the jury properly. Quite simply, the defense did not seek an instruction from the court for the jury to disregard the testimony about the sexual activity that went on in the jail.
Additionally, Hurns argues that he was entitled to a ruling under M.R.E. 404(b) on the issue of the admission of evidence of other crimes, wrongs or acts. We find that the evidence was admissible under Rule 404(b) to relate the complete story of the crime by showing that Hurns had total domination over all the inmates in the facility. Rule 404(b) states that:
Evidence of other crimes, wrongs or acts is not admissible to prove the character of a person in order to show that he acted in conformity therewith. It may, however, be admissible for other purposes such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity or absence of mistake or accident.
This Court has held that other crimes or acts may be proven where "integrally related in time, place and fact" to the crime charged. Wheeler v. State, 536 So.2d 1347, 1352 (Miss. 1988). Wheeler quoted from a prior case of this Court: "[w]e are concerned here with the State's legitimate interest in telling a rational and coherent story of what happened." Id. quoting Neal v. State, 451 So.2d 743, 759 (Miss. 1984). Both of these cases recognize that the focus of Rule 404(b) is on the prohibition of character evidence offered to prove conduct in conformity therewith, not simply a blanket prohibition of evidence of other actions which might be relevant in another manner. The rationale of Wheeler applies to the present case. The evidence of the sexual activity greatly enhanced the State's theory of the case that Hurns so dominated the other inmates that they would do absolutely anything he said, even participate in the beating death of a fellow inmate. We find there to be no merit or error in this issue presented for review.

CONCLUSION
Having thoroughly examined the record and issues raised on appeal, and for reasons heretofore stated, Hurns' right to a speedy trial was not violated. A careful weighing of the factors under Barker v. Wingo shows no violation. The admission of the photograph in question was within the trial court's sound discretion. The photograph had overwhelming probative value and was not so gruesome or used in such a way as to be overly prejudicial or inflammatory. The facts of the case did not support Hurns' requested jury instruction D-3 on culpable negligence but rather supported the simple murder instruction as allowed by the court. Finally, the evidence of sexual misconduct at the jail which was originally a part of the capital murder charge subsequently dismissed by the court was closely related to the crime charged so that its admission was essential for telling a total, rational and coherent *322 story. The appellant merely asked that the jury be instructed the case was no longer a capital case and the death penalty would not be considered. The court adequately instructed the jury. Hurns' conviction of murder, adjudication in accordance with the jury verdict and as an habitual offender, and sentence of life without parole in the custody of the Mississippi Department of Corrections is hereby affirmed.
CONVICTION OF MURDER AND SENTENCE OF LIFE IMPRISONMENT IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS AS AN HABITUAL OFFENDER, PURSUANT TO SECTION 99-19-81, MISS. CODE OF 1972, AFFIRMED. THE SENTENCE SHALL NOT BE REDUCED OR SUSPENDED NOR SHALL THE DEFENDANT BE ELIGIBLE FOR PAROLE OR PROBATION.
HAWKINS, C.J., DAN M. LEE and PRATHER, P.JJ., SULLIVAN, PITTMAN, McRAE and ROBERTS, JJ., concur.
BANKS, J., concurs in part with separate written opinion joined by HAWKINS, C.J., and DAN M. LEE, P.J.
BANKS, Justice, concurring in part:
I concur in the result reached by the majority. As to Part III of the Court's opinion that result is dictated by Windham v. State, 602 So.2d 798 (Miss. 1992) and Mallett v. State, 606 So.2d 1092 (Miss. 1992), and I am constrained to follow those precedents. I write only to note my reluctance, because I believe them ill-advised for the reasons stated in my dissent in Windham, 602 So.2d at 808, and that of Justice Lee in Mallett, 606 So.2d at 1096.
HAWKINS, C.J., and DAN M. LEE, P.J., join this opinion.