# IN THE SUPREME COURT OF MISSISSIPPI

## NO. 2023-KA-00955-SCT

***KEITH L. GOODS a/k/a KEITH LAMOND GOODS***

***v.***

***STATE OF MISSISSIPPI***

| | |
|---|---|
| DATE OF JUDGMENT: | 08/10/2023 |
| TRIAL JUDGE: | HON. TOMIKA HARRIS IRVING |
| TRIAL COURT ATTORNEYS: | ALEXANDER C. MARTIN |
| | DEXTER LAMON WOODBERRY |
| | MILTON CARROLL McCARDLE |
| | DANIELLA MARIE SHORTER |
| | LARRY GUS BAKER |
| | KEITH LERONE GATES |
| COURT FROM WHICH APPEALED: | COPIAH COUNTY CIRCUIT COURT |
| ATTORNEYS FOR APPELLANT: | OFFICE OF STATE PUBLIC DEFENDER |
| | BY: GEORGE T. HOLMES |
| | HUNTER N. AIKENS |
| ATTORNEY FOR APPELLEE: | OFFICE OF THE ATTORNEY GENERAL |
| | BY: BARBARA BYRD |
| DISTRICT ATTORNEY: | ROBERT R. MORRIS |
| NATURE OF THE CASE: | CRIMINAL - FELONY |
| DISPOSITION: | AFFIRMED - 02/12/2026 |
| MOTION FOR REHEARING FILED: | |

**BEFORE RANDOLPH, C.J., GRIFFIS AND BRANNING, JJ.**

**RANDOLPH, CHIEF JUSTICE, FOR THE COURT:**

¶1.     Keith Goods ("Keith") was convicted by a jury of depraved-heart murder for the death of Keith Bryant ("Bryant"), whom he hit on the back of the head with a club-like object after a night of arguing. On appeal, Keith argues (1) the trial court erred by admitting autopsy photographs S-6D, S-6F, and S-6I; (2) the verdict was against the overwhelming weight of

the evidence; and (3) the trial court failed to fully and fairly instruct the jury on depraved-heart murder and culpable-negligence manslaughter. We affirm the judgment of the trial court.

## FACTS AND PROCEDURAL HISTORY

¶2. Bryant was found lying in the middle of the road with a bleeding wound on the back of his head; he later died while being treated. Investigator Todd Clement ("Clement") testified that the morning after Bryant was found, Lisa Goods and Georoxie Martin, respectively the wife and stepdaughter of Dannie Goods ("Dannie"), implicated Keith and his brother Dannie.

¶3. During Clement's interrogation of Dannie, Dannie offerred multiple inconsistent stories. In each story, he, Keith, and Bryant went to Port Gibson in Dannie's truck. In the first versions, Dannie claimed Bryant made it home alive. Eventually, Dannie said Keith and Bryant were arguing all night. During the last vehicle stop, Dannie said Keith got a black club-like object and hit Bryant with it a few times. Bryant did not get back up, and Dannie said he did not call for help because he was scared. Dannie drew the dark, club-like object on note paper and said it was in the back of his truck. However, Dannie washed his truck the following morning.

¶4. Clement obtained a search warrant for Dannie's truck and found an object matching Dannie's description of the alleged weapon. Both Keith and Dannie were accused of murder, but a grand jury indicted only Keith.

2

¶5.	After Clement testified, Dr. Mark LeVaughn, a forensic pathologist ("pathologist"), testified on the cause and manner of death, homicide. The State questioned him extensively about Bryant's injuries. The pathologist testified that "there was a laceration or tear in the scalp in the back of the head . . . about an inch, inch and a half long." Beneath the scalp, the pathologist saw "continuing areas of bleeding or hemorrhaging or bruising, on the back part of the scalp and it went over . . . towards the left side of his head towards where the left ear is." The pathologist also saw "a lot of hemorrhage on the brain. The brain was swollen." He also found "a fracture in the back of the skull."

¶6.	During the autopsy, the pathologist took photographs and documented his findings. The State offered nine photographs from the autopsy. After the photographs were marked for identification, the pathologist described what was depicted by each photograph. The State then sought to admit the photographs into evidence. Keith's counsel objected and stated that

> this man passed away from a traumatic head injury, and these photographs are going to be much more prejudicial than probative. And I don't think -- I think with the description the doctor has given, that's enough to prove that this man died from a traumatic head injury. And these photos are gross. I don't think looking at them -- they are not going to help the jury.

Cocounsel for the defense also asserted that "some of those photos are repetitious." After examining the nine photographs, the trial court stated "the Court does believe the pictures are relevant and necessary to Dr. LeVaughn's testimony. Not all of them are needed." The court excluded four photographs as being cumulative and admitted the remaining five, three of which are at issue here. Ultimately, the pathologist concluded "the manner of death of

3

Keith Bryant is homicide."

¶7.    On cross-examination of the pathologist, Keith's counsel asked questions suggesting that Bryant had accidentally fallen out of the truck and hit his head. The doctor did not agree with that suggestion, clearly opining that the manner of death was homicide.

¶8.    Lisa Goods next testified that the three men left in Dannie's truck, but only Dannie and Keith returned. After they returned, Dannie sat in his truck alone for about thirty-five to forty minutes, which she thought was strange. On cross-examination, Lisa said Dannie called her the next day, claiming Bryant was in the hospital after having being run over. Later that evening, a police officer came to her house, and she told the officer she felt like "something went wrong, something happened." She said Dannie was a "notorious liar" and that the group had been drinking before they left. She also said Dannie washed his truck to "clean[] the evidence out."

¶9.    The next witness was Teresa Watkins, Keith's girlfriend at the time. She said the group had been drinking and that the three left in Dannie's truck. However, she only saw Keith return because she was in bed when he arrived.

¶10.   The State then called Shenedian Mitchell. She testified that the three arrived at a store at 4:00 p.m. that evening. She saw Keith tell Bryant to get out of the cab of Dannie's truck and to sit in the back. After Bryant complied, they drove away. At about 10:55 p.m., she saw Dannie and Keith again, but she did not see Bryant.

¶11.   The State then called Dannie. He testified that he, Keith, and Bryant went to Port

Gibson. Keith and Bryant argued throughout the night. During one stop, Keith hit Bryant with the club-like object. After Bryant stopped moving, Keith and Dannie panicked and left. Dannie then dropped Keith off at Watkins's house and went to his own home.

¶12. On cross-examination, Dannie admitted to washing his truck and returning a jack he had borrowed from his boss the day following Bryant's death. During Keith's cross-examination of Dannie, counsel brought up numerous inconsistencies in Dannie's testimony at trial, Dannie's testimony at his questioning by Investigator Clement, and the testimony of other witnesses at trial, such as his wife, Lisa. Dannie conceded he had made multiple inconsistent statements during his questioning by Investigator Clement. The State displayed a video and audio recording of Dannie's interrogation. *Supra* ¶ 3.

¶13. When jury instructions were discussed, no objections were registered to jury instruction S-7, which defined *depraved heart*, or jury instruction S-8, which defined *culpable negligence*. No further witnesses were called by the State or Keith, and both rested.

¶14. The jury found Keith guilty of second-degree murder, but the jurors could not agree to sentence Keith to life in prison. Following the applicable statute, the judge sentenced him to thirty years' imprisonment. *See* Miss. Code Ann. § 97-3-21(2) (Rev. 2020).

**ANALYSIS**

¶15. On appeal, Keith argued that (1) the trial court erred by admitting autopsy photographs S-6D, S-6F, and S-6I, three of the five autopsy photographs admitted; (2) the verdict was against the overwhelming weight of the evidence; and (3) the trial court failed to fully and

5

fairly instruct the jury on depraved-heart murder and culpable-negligence manslaughter.

I.      **Whether the trial court erred by admitting autopsy photographs S-6D, S-6F, and S-6I because the photographs' prejudicial effect substantially outweighed their probative value.**

¶16.    Keith argued at trial that autopsy photographs S-6D, S-6F, and S-6I "are going to be much more prejudicial than probative." He argued that the photographs were (1) "gross," (2) "repetitious," and (3) unnecessary based on the pathologist's testimony up to that point. On appeal, Keith similarly argues the photographs were gruesome and inflammatory, claiming a violation of Mississippi Rule of Evidence 403.

¶17.    S-6D "is a photograph of the internal scalp . . . . [I]t shows a diffuse or extensive hemorrhage from the back of his head and also including the left side of his head." S-6F is a "photograph of the actual brain after it has been removed from the cranial cavity. . . . [T]he significant finding in this photograph is that there is large amounts of hemorrhage on the right side of his brain." S-6I "is a photograph of the bottom or inside of his skull after the brain is removed. And it shows a fracture of the back of his skull on the left."

¶18.    This Court reviews a trial court's decision to admit photographs for abuse of discretion. *Hutto v. State*, 227 So. 3d 963, 982 (Miss. 2017) (citing *Bonds v. State*, 138 So. 3d 914, 919 n.2 (Miss. 2014)); *Ambrose v. State*, 254 So. 3d 77, 135 (Miss. 2018); *Mills v. State*, 376 So. 3d 1215, 1218 (Miss. 2023). "[T]here are meaningful limits, and they are defined by weighing the probative value of the photograph against the prejudicial effect and potential to inflame and arouse the passions of the jury." *Ambrose*, 254 So. 3d at 135 (citing

6

***Bonds***, 138 So. 3d at 920-21). In other words, a trial court's discretion to admit autopsy photographs is limited by Mississippi Rule of Evidence 403. ***Id.***; Miss. R. Evid. 403.

¶19.    "[P]hotographs should not be admitted 'where the killing is not contradicted or denied, and the corpus delicti and the identity of the deceased have been established.'" ***Bonds***, 138 So. 3d at 918 (quoting ***Thong Le v. State***, 913 So. 2d 913, 955 (Miss. 2005), *overruled by* ***Bonds***, 138 So. 3d 914). However, "photographs of a victim have evidentiary value when they aid in describing the circumstances of the killing, describe the location of the body and cause of death, or supplement or clarify witness testimony." ***Hutto***, 227 So. 3d at 982 (citations omitted) (quoting ***Keller v. State***, 138 So. 3d 817, 857 (Miss. 2014)).

¶20.    Here, the facts of how Bryant died and who or what killed him were in dispute. The photographs were used as evidence that multiple blunt-force trauma wounds were the cause of death and to supplement the pathologist's testimony. *See* ***Hutto***, 227 So. 3d at 982. Further, since ***Bonds***, this Court has affirmed the admission of photographs more gruesome than those in this case. ***Mills***, 376 So. 3d at 1218-20 (allowing photographs of a woman wounded "so severely that a first responder repeatedly exclaimed she had been 'cut in half'"); ***Martin v. State***, 289 So. 3d 703, 706 (Miss. 2019) (allowing photographs showing the victim's "lungs filled with blood" and "the extent of the trauma and hemorrhaging to [the victim's] head"); ***Ambrose***, 254 So. 3d at 134-36 (allowing a photograph showing the victim's "head and face," which was used to assist "testimony describing the blunt force trauma to [the victim's] head"); ***Hutto***, 227 So. 3d at 981-82 (allowing photographs showing

"a 'fracture or break in the spine'" and "an ear-to-ear skull fracture").[1] The court did not abuse its discretion by admitting the autopsy photographs.

## II. Whether the verdict was against the overwhelming weight of the evidence because Dannie's testimony was unreliable.

¶21. Keith's brief asserts that "Keith's guilt or innocence turned on the testimony of Dannie, who provided the only evidence that Bryant was killed by Keith hitting him in the head with an object." Keith argues that because Dannie lied multiple times and would have a motive to lie if he was responsible for Bryant's death, his testimony was unreliable. Keith further argues that because Dannie's testimony was unreliable, Keith's conviction was against the overwhelming weight of the evidence.

¶22. Keith's argument pertains to witness credibility, specifically Dannie's credibility. "Issues of fact and credibility are the primary responsibility of the trier of fact. Accordingly, this Court should not reweigh the facts nor substitute its judgment for that of the fact finder as to credibility issues." *Coleman v. State*, 411 So. 3d 137, 145 (Miss. 2025) (internal quotation marks omitted) (quoting *Williams v. State*, 391 So. 3d 1151, 1158 (Miss. 2024)); *Williams v. State*, 391 So. 3d 193, 198 (Miss. 2024). "Because the jury is the 'judge of the weight and credibility of testimony,' it is 'free to accept or reject all or some of the testimony given by each witness.'" *Coleman*, 411 So. 3d at 146 (quoting *Jones v. State*, 390 So. 3d

---

[1]The Court in *Bonds* explained what is unacceptable. *Bonds*, 138 So. 3d at 919 (reversing due to the admission of a photograph "of a rotting, maggot-infested, disfigured skull and face" when the photograph otherwise offered no discernable probative value).

498, 503 (Miss. 2024)); ***Williams***, 391 So. 3d at 198.

¶23. Here, Keith's conviction is not against the overwhelming weight of the evidence. Three witnesses testified that Keith, Dannie, and Bryant started the night together, and two of the witnesses testified that Bryant was missing by the end of the night. Two witnesses testified that Bryant suffered a severe injury, and a medical examiner testified that he believed the cause of death was homicide. Finally, Dannie told both law enforcement the day after and the jury at trial that he saw Keith hit Bryant on the back of the head with a club-like object. While Dannie's testimony may not always be trustworthy, that credibility is an issue for a jury, not a court, to decide. ***Coleman***, 411 So. 3d at 145. Keith argued Dannie was the killer. The jury chose to reject that argument.[2] As a result, Keith's conviction was not against the overwhelming weight of the evidence.

### III.    Whether the trial court failed to fully and fairly instruct the jury on depraved-heart murder and culpable-negligence manslaughter.

¶24. Keith acknowledges that he did not object to the instructions at trial, thus this issue is procedurally barred and can only be reviewed for plain error. ***McCollum v. State***, 372 So. 3d 980, 985-86 (Miss. 2023) (citing ***Willie v. State***, 204 So. 3d 1268, 1278 (Miss. 2016));

---

[2]Assuming, arguendo, that Dannie's testimony was absent from this case, "circumstantial evidence and direct evidence carry the same weight." ***Nevels v. State***, 325 So. 3d 627, 632 (Miss. 2021) (citing ***Williams v. State***, 305 So. 3d 1122, 1129 (Miss. 2020)). The Court has even gone so far as to opine that "circumstantial evidence . . . may, in the concrete, be the more reliable and stronger." ***Bogard v. State***, 233 So. 2d 102, 105 (Miss. 1970) (internal quotation marks omitted) (quoting 23 C.J.S. *Criminal Law* § 907 (1961)). The fact that Dannie's testimony is the only direct evidence of the killing does not invalidate the weight of the remaining evidence against Keith.

***Spiers v. State***, 361 So. 3d 643, 657 (Miss. 2023).

> "Under the plain-error standard of review, we consider: (1) whether there was an error; (2) that adversely affected a defendant's substantive rights, causing a manifest miscarriage of justice." "For the plain-error doctrine to apply, there must have been an error that resulted in a manifest miscarriage of justice or seriously affects the fairness, integrity or public reputation of judicial proceedings."

***McCollum***, 372 So. 3d at 986 (quoting ***Johnson v. State***, 290 So. 3d 1232, 1240 (Miss. 2020)).

¶25. Keith argues that the trial court plainly erred by (1) giving instructions that presented depraved-heart murder as a lower standard than culpable-negligence manslaughter and (2) defining culpable negligence in terms of civil negligence. Once again, the trial court did not err.

¶26. Instruction S-7 read:

> The Court instructs the jury that "depraved heart" means a person acts in a highly dangerous way, which shows that he does not care for the safety of human life. Even if someone does not intend to kill a person, he can still be guilty of murder if he acts with a depraved heart, and a person is killed as a result.

¶27. Instruction S-8 read:

> The term, "culpable negligence" means negligence of a degree so great as to be equal to a complete disregard or indifference to the safety of human life. *Negligence* is doing something that a reasonable careful person would not do under similar circumstances or failing to do something a reasonably careful person would do under similar circumstances.

(Emphasis added.)

> a. *Whether the trial court erred by giving instructions that*

10

*presented depraved-heart murder as a lower standard*
*than culpable negligence manslaughter.*

¶28.　This Court has held:

> When considering whether the trial court erred by granting or denying a jury instruction, this Court reviews all of the instructions "as a whole to determine if the jury was properly instructed." "[D]efects in specific instructions will not mandate reversal when all of the instructions, taken as a whole fairly—although not perfectly—announce the applicable primary rules of law." "[I]f the instructions fairly announce the law of the case and create no injustice, no reversible error will be found."

***Saxton v. State***, 385 So. 3d 753, 757 (Miss. 2024) (alterations in original) (citations omitted).

¶29.　Here, the trial court committed no error because the instructions made clear that depraved-heart murder is more severe than culpable-negligence manslaughter. Instruction S-4, which instructed the jury on culpable negligence manslaughter, says:

> [i]f you find that the State did not prove any one of the elements of murder, then you must find Keith Lamond Goods not guilty of murder. You will then proceed with your deliberation to decide whether the state proved beyond a reasonable doubt all the elements of the *lesser crime* of manslaughter."

(Emphasis added.) Instruction S-10A also established the hierarchy of crimes. It first instructed the jury to determine if Keith committed first-degree murder. If not, then it instructed the jury to deliberate whether he committed second-degree murder. If not, the jury was instructed to "determine if the Defendant is guilty of the *lesser-included offense of culpable negligence manslaughter*." (Emphasis added.) Based on the instructions given, the jury was properly instructed that culpable-negligence manslaughter is a lesser offense than depraved-heart murder.

11

b. *Whether the trial court erred by defining culpable negligence in terms of civil negligence.*

¶30. Culpable negligence is "negligence of a higher degree than that which in civil cases is held to be gross negligence, and must be a negligence of a degree so gross as to be tantamount to a wanton disregard of, or utter indifference to, the safety of human life." *Conley v. State*, 790 So. 2d 773, 793 (Miss. 2001) (quoting *Grinnell v. State*, 230 So. 2d 555, 558 (Miss. 1970)); *Smith v. State*, 197 Miss. 802, 20 So. 2d 701 (1945). When a trial court instructs on both depraved-heart murder and culpable-negligence manslaughter, "the more appropriate definition of culpable negligence is 'negligence of a degree so gross as to be tantamount to a wanton disregard of, or utter indifference to, the safety of human life.'" *Clayton v. State*, 652 So. 2d 720, 726 (Miss. 1995) (quoting *Hurns v. State*, 616 So. 2d 313, 320 (Miss. 1993)); *see also Sanders v. State*, 781 So. 2d 114, 119 (Miss. 2001) (quoting *Clark v. State*, 693 So. 2d 927, 932 (Miss. 1997)); *but see Chandler v. State*, 946 So. 2d 355, 361 (Miss. 2006) (defining culpable-negligence as "such gross negligence . . . as to evince a wanton or reckless disregard for the safety of human life, or such an indifference to the consequences of an act under the surrounding circumstances as to render such conduct tantamount to willfulness" (alteration in original) (internal quotation marks omitted) (quoting *Shumpert v. State*, 935 So. 2d 962, 967 (Miss. 2006))).

¶31. Here, the jury instruction did not define culpable negligence in terms of civil negligence. The first sentence in Instruction S-8 defined culpable negligence substantially the same as what *Clayton* requires. The *Clayton* Court defined culpable negligence as

12

"negligence of a degree so *gross* as to be *tantamount* to a *wanton* disregard of, or utter indifference to, the safety of human life." ***Clayton***, 652 So. 2d at 726 (emphasis added) (internal quotation marks omitted) (quoting ***Hurns***, 616 So. 2d at 320). The instruction at issue here defined culpable negligence as "negligence of a degree so *great* as to be *equal* to a *complete* disregard or indifference to the safety of human life." (Emphasis added.)[3] While the trial court used slightly different wording, the two definitions convey the same meaning. Further, the second sentence only defines negligence rather than culpable negligence. Because the court instructed the jury as to the proper standard and did not define culpable negligence in civil negligence terms, the trial court committed no error.

¶32.    Assuming, arguendo, error, the error was harmless. This Court has held that when a jury convicts a defendant of murder, any errors with the manslaughter instructions are harmless because the instructions "did not contribute to the verdict." ***Conley***, 790 So. 2d at 793 (citing ***Chapman v. California***, 386 U.S. 18, 87 S. Ct. 824, 17 L. Ed. 2d 705 (1967)). Here, Keith was found guilty of second-degree murder, so any errors as to the manslaughter instructions are harmless. ***Id.***

---

[3]"Gross," which corresponds with "great" in the instruction, can mean "glaringly noticeable usually because of inexcusable badness or objectionableness." *Gross*, Merriam-Webster.com, https://www.merriam-webster.com/dictionary/gross (last visited Jan. 22, 2026). "Tantamount," which corresponds with "equal" in the instruction, means "equivalent in value, significance, or effect." *Tantamount*, Merriam-Webster.com, https://www.merriam-webster.com/dictionary/tantamount (last visited Jan. 22, 2026). "Wanton," which corresponds with "complete" in the instruction, can mean "being without check or limitation." *Wanton*, Merriam-Webster.com, https://www.merriam-webster.com/dictionary/wanton (last visited Jan. 22, 2026).

13

**CONCLUSION**

¶33.    On appeal, Keith first argues the trial court erred by admitting certain photographs. This issue is without merit because this Court has affirmed the admission of autopsy photographs when they present evidentiary value, as they do here. We see no basis for finding that the photographs would inflame and prejudice the jury against Keith.

¶34.    Second, Keith argues the verdict was against the overwhelming weight of the evidence. This issue is also without merit. The issue hinges on the credibility of Dannie as a witness; this Court will not reweigh the jury's findings on credibility.

¶35.    Finally, Keith argues the trial court committed plain error by failing to fully and fairly instruct the jury on depraved-heart murder and culpable-negligence manslaughter. This issue is also without merit because the instructions as a whole clarify the hierarchy of crimes and accurately convey the standard for culpable negligence.

¶36.    This Court affirms Keith's conviction and sentence.

¶37.    **AFFIRMED.**

**KING AND COLEMAN, P.JJ., ISHEE, GRIFFIS, SULLIVAN AND BRANNING, JJ., CONCUR.**

14