IN THE SUPREME COURT OF MISSISSIPPI
NO. 93-KA-00897-SCT

*JERRY CLARK*

*v.*

*STATE OF MISSISSIPPI*

| | |
|---|---|
| DATE OF JUDGMENT: | 05/26/93 |
| TRIAL JUDGE: | HON. JAMES E. THOMAS |
| COURT FROM WHICH APPEALED: | HARRISON COUNTY CIRCUIT COURT |
| ATTORNEY FOR APPELLANT: | JAMES L. DAVIS III |
| ATTORNEY FOR APPELLEE: | OFFICE OF THE ATTORNEY GENERAL |
| | BY: W. GLENN WATTS |
| DISTRICT ATTORNEY: | CARANNA, CONO, |
| NATURE OF THE CASE: | CRIMINAL - FELONY |
| DISPOSITION: | AFFIRMED - 5/8/97 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | 5/29/97 |

**BEFORE PRATHER, C.J., PITTMAN AND McRAE, JJ.**

**McRAE, JUSTICE, FOR THE COURT:**

¶1. Jerry Clark appeals his May 26, 1993 conviction for murder by a jury of the Harrison County Circuit Court for the shooting death of his child's mother, Lollie Meunier. The evidence does not support a lesser charge of manslaughter and that the circuit court properly admitted a transcript of the victim's desperate 911 call while Clark was shooting at the door behind which he knew she was hiding. Accordingly, we affirm Clark's conviction and sentence of life imprisonment.

I.

¶2. Jerry Clark and Lollie Meunier lived together from 1978 until 1991. One child was born to them during this time. In 1990, the relationship began to deteriorate and Meunier moved into her own home. In response to his frustrations at work and his problems with Meunier, Clark started using illicit drugs.

¶3. Clark began calling Meunier at the convenience store where she worked. On June 22, 1992, Clark

went to the store to see her. The two argued and Meunier locked herself in the office. Clark became belligerent and Meunier refused to open the door. Clark went to his car and returned with a shotgun and Meunier called Emergency 911.

¶4. Clark shot the door several times in an attempt to enter the room. The shots hit Meunier at close range and killed her. Dr. Paul McGarry, the forensic pathologist who performed the autopsy, testified that she died of a close range shotgun blast to her right breast. He also found wounds in her left arm and across her face.

¶5. Officer Phillip Cullota of the Gulfport Police Department testified that he went to the convenience store in answer to a 911 call placed at 3:46 a.m. on June 22, 1992, and saw Clark come from behind the counter into the customer area of the store. Officers Cullota and Claud Guinn, a detective with the Gulfport Police Department, arrested Clark at the scene. In Clark's recorded statement to police, he claimed that he was just trying to shoot the knob off the door to gain access to the room where Meunier was hiding.

¶6. A jury trial was held on May 25 and 26, 1993. At the close of the State's case, Clark moved for a directed verdict in his favor and in the alternative, that the case go to the jury solely on the issue of manslaughter. His motion was overruled by the circuit court. Although the jury was instructed on the lesser-included offense of manslaughter, Clark's Instructions D-4 and D-8 on the issue of "culpable negligence" pursuant to Miss. Code Ann. § 97-3-47 (1972) were denied. The jury found Clark guilty of murder and he was given a life sentence in the custody of the Mississippi Department of Corrections. Clark's motion for a new trial, or in the alternative, for j.n.o.v., was denied by the circuit court on July 16, 1993.

II.

¶7. Clark first contends that the circuit court erred in failing to grant a directed verdict or j.n.o.v., asserting that he was guilty merely of manslaughter through "culpable negligence," and not murder. Raising the same arguments, he further asserts that there was insufficient evidence to support a murder conviction and that the verdict was against the evidence.

¶8. Manslaughter is defined in Miss. Code Ann. § 97-3-35 (1972) as "[T]he killing of a human being, without malice, but in a cruel or unusual manner, or by the use of a dangerous weapon, without the authority of law, and not in necessary self-defense."

¶9. In *Scott v. State*, 185 So. 195, 196 (Miss.1938), this Court defined "culpable negligence" as "that degree of negligence or carelessness which is denominated as gross negligence, and which constitutes such a departure from what would be the conduct of an ordinarily careful and prudent man under same circumstances as to furnish evidence of indifference to consequences."

¶10. Murder, on the other hand, is defined in Miss. Code Ann. § 97-3-19 (1972) as the

"killing of a human being without the authority of law by any means or in any manner . . . in the following cases:

(b) When done in the commission of any act eminently dangerous to others and evincing a depraved heart, regardless of human life, although without any premeditated design to effect the

death of any particular individual."

¶11. In *Windham v. State*, 602 So.2d 798, 801 (Miss.1992), this Court distinguished "depraved heart" murder and "culpable negligence" by holding that "depraved heart murder involves a higher degree of recklessness from which malice or deliberate design may be implied."

¶12. Clark testified that he did not intend to kill Meunier, but that he was merely shooting at the door knob to gain access to the room so that he could talk to her. He perceives the act of shooting through a steel door to gain entry to an office where his former paramour was hiding as devoid of malice. Thus, he relies on *Wells v. State*, 305 So.2d 333, 339-340 (Miss.1974), for the proposition that where no malice is shown from the evidence, the case should go to the jury for a determination of manslaughter alone. He neglects to note however, that in a "depraved heart" murder, malice can be inferred from the circumstances if the actions involved a very high degree of carelessness evincing a reckless indifference to the danger to human life. *Windham*, 602 So. 2d at 802.

¶13. In Clark's own statement to the police, he admitted the following:

CLARK- . . . [S]o I went out there (inaudible) the gun. I gone shoot the door knob off, that's what, it's only thing was shot was the door knob over there. I says open the door. That's all I was trying to do. That's all.

GUINN- What kinda gun?

CLARK- It's a twelve gauge.

GUINN- How many times did you shoot?

CLARK- The t-, well I shot the, I shot the first the door, the door knob off, well, I shoot the first time the door knob fell off. I thought I could open it and then it still wouldn't open so I said get out of the way. I shot it. I shot the door down again, it still wouldn't open.

¶14. Clark's statement acknowledges that the door knob fell off the steel door behind which Meunier was hiding after the first shot. Moreover, the transcript of the 911 emergency call made by the victim clearly indicates Clark's indifference to the danger he posed to Meunier's life.

EPPERSON- 911

FEMALE CALLER- Please help, I'm down at Conoco. There's a crazy man out here, he's got a gun.

EPPERSON- Ma'am, ma'am, ma'am, don't hang up the phone. Don't hang up the phone.

FEMALE CALLER- Please help me! Please!

EPPERSON- What's the problem, ma'am?

FEMALE CALLER- There's a man out here with a gun, he's tryin' to kill me.

A few seconds later:

UNKNOWN MALE- Open that fuckin' door or I'll kill you now!

FEMALE CALLER- Oh, God, please! Please send somebody please!

EPPERSON- Ma'am, we've got the officers on the way.

FEMALE CALLER- (Screams)

EPPERSON- Ma'am?

FEMALE CALLER- Oh, God! (Screams)

EPPERSON- Ma'am?

FEMALE CALLER- (Inaudible) please! Please (inaudible) hurt me!

EPPERSON- Ma'am?

FEMALE CALLER- (Inaudible) hurt me!

UNKNOWN MALE- Open the door!

FEMALE CALLER- Okay! (Screams)

EPPERSON- Ma'am? Ma'am?

UNKNOWN MALE- I'll kill you!

FEMALE CALLER- Okay, I'm opening it, please!

FEMALE CALLER- (Screams)

FEMALE CALLER-Please! Okay! I'll open it!

FEMALE CALLER- (Screams)

UNKNOWN MALE- I see you on the floor. Open the door now! Open it now! Open the door, Lollie, please! Open it or I'll kill you now!

¶15. In denying Clark's motion for a directed verdict, the circuit court found that the State had presented sufficient evidence to establish that Clark had acted with deliberate design in killing Meunier. The standard for determining the sufficiency of the evidence for a directed verdict motion is that the evidence and all reasonable inferences therefrom should be viewed in the light most favorable to the State and evidence favorable to the defendant disregarded. *Noe v. State*, 616 So.2d 298, 302 (Miss.1993); *Clemons v. State*, 460 So.2d 835, 839 (Miss.1984). If sufficient evidence to support a guilty verdict exists, the motion for a directed verdict should be denied. *Id.*; *Brown v. State*, 556 So.2d 338, 340 (Miss.1990). The trial court's findings were supported by Clark's statement to the police following the incident, the transcript of the 911 emergency call, and the testimony at trial, all of which indicate a sufficient degree of recklessness and indifference to human life pointing to a conviction, at the very least, for manslaughter or murder, and not culpable negligence. Malice too

may be inferred when such a high degree of recklessness is involved, raising the level of crime from "culpable negligence" manslaughter to "depraved heart" murder. The circuit court, therefore, cannot be held in error for denying the motion for a directed verdict.

¶16. The circuit court granted an instruction for the lesser-included offense of manslaughter as well as the State's requested instruction for murder. The jurors obviously resolved the fact questions in favor of the State. Clark, however, submits that the circuit court erred in not granting his motion for j.n.o.v. Once a case is submitted to the fact finder, "any factual disputes are properly resolved by the jury and do not mandate a new trial." *Johnson v. State*, 642 So.2d 924, 928 (Miss.1994). This Court will only reverse where "reasonable and fair minded jurors could only find the accused not guilty." *Id.* at 927. Based on the evidence in the record, "reasonable and fair minded jurors" could hardly have found Clark not guilty. The circuit court therefore properly denied the motion for j.n.o.v. Clark's motion for a new trial was within the discretion of the trial judge. We will not reverse the denial of a motion for a new trial "unless we are convinced that the verdict is so contrary to the overwhelming weight of the evidence that to allow it to stand would sanction an unconscionable injustice." *Morgan v. State*, 681 So. 2d 82, 93 (Miss. 1996); *Johnson*, 642 So. 2d at 928. Because we cannot say that the verdict in this case was contrary to the evidence, we affirm the decision of the circuit court.

III.

¶17. Clark's motion to suppress the transcript and tape of the 911 call made by Lollie Meunier during the shooting was denied by the circuit court. At trial, Clark objected to its admission on grounds of hearsay. The circuit court overruled the objection, stating that it clearly was admissible under M.R.E. 803(1), the present sense impression exception, and/or M.R.E. 803(2), the excited utterance exception. The judge also indicated that it could come in under M.R.E. 803(6), records of regularly conducted business activity or the M.R.E. 803(24) catchall exception. Clark asserts, however, that the circuit court erred in admitting the 911 call under the dying declaration exception.

¶18. Hearsay is "a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted." M.R.E. 801(c). Hearsay evidence is inadmissible unless it falls within one of the known exceptions. The circuit court correctly found that the 911 call was admissible under either the present sense impression or excited utterance exceptions to the rule against hearsay.

¶19. The Mississippi Rules of Evidence explain a "present sense impression" as a "statement describing or explaining an event or condition made while the declarant was perceiving the event or condition or immediately thereafter." M.R.E. 803(1). Its exception from the rule against hearsay is based on the theory that the contemporaneousness of the occurrence of the event and the statement render it unlikely that the declarant made a deliberate or conscious misrepresentation. M.R.E. 803(1), comment 1; *Peterson v. State*, 518 So.2d 632, 640 (Miss.1987)(citing 4 J. Weinstein, Evidence, Para. 803(1)[01] (1987)). To be admissible under this exception, the statement must be spontaneous. The determination of spontaneity "is a question for the trial judge, whose action should not be overturned unless this Court would be justified in concluding that under all and any reasonable interpretation of the facts the exclamation could not have been spontaneous." *Evans v. State*, 547 So.2d 38, 41 (Miss.1989). The circuit court correctly found that the statements made by Meunier while talking with the emergency operator perceived the event, described what was happening to her,

and were sufficiently contemporaneous to fit within the exception.

¶20. An excited utterance is a "statement relating to a startling event or condition made while the declarant was under the stress of the excitement caused by the event or condition." M.R.E. 803(2). The reliability of an excited utterance is based on the premise that circumstances may place the declarant in such an excited state as to temporarily impede the capacity for reflection. This exception is broader in scope than the "present sense impression" exception in that the statement need only "relate" to the startling event as opposed to "describing" it. M.R.E. 803(2), comment 2. The 911 emergency call fits under the "excited utterance" exception since it relates to the events that were unfolding as it was made, it was made while Meunier was in an excited state, and it was made contemporaneously with the event. The circuit court did not err in admitting the transcript of the 911 call under M.R.E. 803(2).

IV.

¶21. The jury was instructed on the lesser-included offense of manslaughter. Clark, however, asserts that the circuit court erred in not also granting Instructions D-4 and D-8 on culpable negligence. "Lesser-included offense instructions should be given if there is an evidentiary basis in the record that would permit a jury rationally to find the defendant guilty of the lesser offense and to acquit him of the greater offense." *Welch v. State*, 566 So. 2d 680, 684 (Miss. 1990); *McGowan v. State*, 541 So. 2d 1027 (Miss. 1989). Reviewing the propriety of such an instruction, we have stated:

> A lesser-included offense instruction should be granted unless the trial judge and ultimately this Court can say, taking the evidence in the light most favorable to the accused and considering all the reasonable inferences which may be drawn in favor of the accused from the evidence, that no reasonable jury could find the defendant guilty of the lesser-included offense (conversely, not guilty of at least on element of the principal charge).

*McGowan*, 541 So. 2d at 1028, quoting *Harper v. State*, 478 So. 2d 1017, 1021 (Miss. 1985). Culpable negligence is defined as "negligence of a degree so gross as to be tantamount to a wanton disregard of, or utter indifference to, the safety of human life." Miss. Code Ann. § 97-3-47; *Horns v. State*, 616 So. 2d 313, 320 (Miss. 1993). Clark's own testimony, however, reveals more than a wanton disregard of or indifference to Meunier's safety or well-being. Rather, he took deliberate action in returning to his truck, retrieving his shotgun, entering the building, shooting the door know off with the first shot, and then loading and firing three more shots through the door while Meunier screamed and frantically attempted to summon help. Looking at the evidence in a light most favorable to Clark, as well as all reasonable inferences which may be drawn therefrom, a reasonable jury could not have found him guilty of mere culpable negligence. Moreover, "all instructions must be supported by evidence" and if they are not, the instruction should not be given. *Dennis v. State*, 555 So. 2d 679, 683 (Miss. 1989); *Moffett v. State*, 540 So. 2d 1313 (Miss. 1989). The evidence in the record does not support proposed Instructions D-4 and D-8. Accordingly, we cannot hold the circuit court in error for refusing to instruct the jury on culpable negligence.

V.

¶22. Because the evidence in the record supports Clark's conviction for murder rather than the lesser charges of manslaughter or culpable negligence, the circuit properly denied his motions for a directed

verdict, a j.n.o.v., and a new trial. The circuit court properly refused to instruct the jury on culpable negligence. Finally, the transcript and tape of Lollie Meunier's 911 call properly were admitted under M.R.E. 803(1) and 803(2). We therefore affirm Clark's conviction and sentence.

¶23. **CONVICTION OF MURDER AND SENTENCE OF LIFE IMPRISONMENT IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS AFFIRMED.**

**LEE, C.J., PRATHER AND SULLIVAN, P.JJ., PITTMAN, ROBERTS, SMITH AND MILLS, JJ., CONCUR. BANKS, J., CONCURS IN RESULT ONLY.**