778 So.2d 779 (2000)
Barron James GOFF a/k/a James Barron Goff, Appellant,
v.
STATE of Mississippi, Appellee.
No. 98-KA-00723-COA.
Court of Appeals of Mississippi.
June 13, 2000.
Rehearing Denied November 21, 2000.
Certiorari Denied February 22, 2001.
*781 Gene Melvin Coxwell, Jr., Jackson, Attorney for Appellant.
Office of the Attorney General by Billy L. Gore, Attorney for Appellee.
BEFORE KING, P.J., PAYNE, AND THOMAS, JJ.
THOMAS, J., for the Court:
¶ 1. Barron James Goff was convicted of non-capital murder and sentenced to life imprisonment by the Circuit Court of Madison County on February 5, 1998. He appeals asserting the trial court erred in:
I. Refusing to give jury instructions on the defense's theories of manslaughter through culpable negligence, excusable homicide through either accident and misfortune or sudden combat and not guilty because of self-defense.
II. Giving a depraved-heart murder instruction.
III. Denying motion for a judgment notwithstanding the verdict or in the alternative a new trial.
IV. Failing to grant a change of venue.
V. Allowing testimony as to the victim's good character.

FACTS
¶ 2. On the evening of December 31, 1996, Goff and his wife, Tish Goff, went to a nightclub in Madison County known as the Dock. Goff testified he consumed a quantity of alcohol and was probably legally intoxicated. Around 2:30 a.m., the morning of January 1, 1997, they went by taxicab in search of a party they believed was being held at a private residence but were unable to locate this party, so they returned to the Dock. Tish Goff testified she walked to a public phone outside the Dock to call the person who was going to give them a ride home. As she was talking on the phone a man walked by her and knocked her into a wall and called her a name. She did not recognize the man.
¶ 3. Goff testified he was standing some 45 feet away and witnessed the man run into his wife. He came to his wife's aid, and as he reached her he saw the man turn into a dark "breezeway" near the entrance to the Dock. He saw his wife was not seriously injured as she stood up and examined her knees to see if they scraped. He then pursued the man. Upon entering the darkened breezeway someone grabbed his shirt. He responded by hitting the person twice and kicking him twice, and the man fell hitting his head with a sound that indicated he might be seriously injured.
¶ 4. The man was identified as Herman Carson, who was well known by Dock employees and patrons as being mentally retarded and a quiet person. He stood five feet four inches tall and weighed 140 pounds. Goff stood six feet two or three inches and weighed 240 of 250 pounds. Carson was transported to a hospital and later transferred to a hospital in Texas where more than a month after he was injured, he died of head injuries.

I.
¶ 5. The jury was instructed on both murder and manslaughter. Goff requested instructions going to several other theories which were denied. A defendant is entitled to jury instructions on his theory of the case whenever there is evidence that would support a jury's finding on that theory. Jackson v. State, 645 So.2d 921, 924 (Miss.1994). Even the "flimsiest of evidence" is sufficient to mandate a trial court's giving an instruction on the proposed *782 theory, but there must be some "probative value" to that evidence. Miller v. State, 733 So.2d 846 (¶ 7) (Miss.Ct.App. 1998). See also Strong v. State, 600 So.2d 199, 203 (Miss.1992).
¶ 6. Goff contends that the trial court should have given his requested instruction on culpable negligence. Goff is incorrect. He testified he intended to punch and kick Carson. An intentional act that causes death cannot constitute culpable negligence. Hums v. State, 616 So.2d 313, 321 (Miss.1993). As such there was no evidence to submit the case to the jury on the theory of culpable negligence, and denying the instruction was not error.
¶ 7. Goff further contends that the trial court should have given his requested instruction on accident and misfortune. An intentional act cannot fit the doctrine of accident or misfortune. Triplett v. State, 666 So.2d 1356, 1362 (Miss.1995). As such there was no evidence to submit the case to the jury on the theory of accident or misfortune, and denying the instruction was not error.
¶ 8. Goff additionally contends that the trial court should have given his requested instruction on self-defense. For a killing to be in self-defense, a person must reasonably be in fear of death or great bodily harm. Ellis v. State, 708 So.2d 884, 887 (Miss.1998). It is not error for a trial court to refuse a self-defense instruction where a person could not have had reasonable grounds to be so placed in fear. Strong, 600 So.2d at 203 (citing Wadford v. State, 385 So.2d 951, 954-55 (Miss.1980)). Goff testified that he chased a man who had knocked down his wife into a darkened passageway or breezeway and described the area as:
[i]t is a dark area that is ... right before you enter the Dock there is a double door where you enter at. It is right before you get to the double doors on the left and there is a gate and it is just a dark area, just a dark.... I walked, I stepped into the breezeway, I was grabbed by the shirt. I just reacted spontaneously ... I swung and kicked, just reacted.
The record reflects that the trial court considered the proposed instruction in light of this testimony and found that even taken as true, and excluding the evidence which contradicted it, Goff did not put forth facts upon which a jury could find he acted in reasonable fear for his safety. We agree. At the time he struck Carson, Goff could not have believed his wife was in danger. Moreover, at that point in time, Goff was admittedly intoxicated and had actual notice that he encountered Carson in a darkened public entryway. He admitted that he did not know whether the man who grabbed him in the public entrance way into the Dock was the same man whom he saw push his wife or just someone leaving the nightclub. Upon these unique facts, the trial court did not err in denying the instruction upon self-defense.
¶ 9. Lastly, Goff contends that the trial court should have given his requested jury instruction on sudden combat. The doctrine of sudden combat is not often invoked although it was contained in Mississippi's earliest Codes and has been carried forward. See Jeffcoat v. State, 21 So.2d 8, 9 (Miss.1945). It is currently codified at Miss.Code Ann. § 97-13-17(c) (Rev.1994). In the one case cited by Goff where it is discussed, Justice Sullivan wrote that sudden combat theoretically could be used in a case involving a dangerous weapon, though that case actually involved accident or mistake. Miller v. State, 677 So.2d 726, 730 (Miss.1996). Nevertheless, what authority there is directly on point establishes that sudden combat is not available to a defendant unless the victim performs "an overt act in or towards a combat." Conner v. State, 179 Miss. 795, 177 So. 46 (1937). See also Jeffcoat, 21 So.2d at 9. No evidence shows that Carson engaged Goff in combat. As such, there was no evidence to support this instruction, and it was properly denied.

*783 II.
¶ 10. Goff urges that we re-examine a line of cases dealing with depraved-heart murder. At the close of the State's case, Goff moved for a directed verdict on the grounds that the State failed to show he acted in violation of the depraved-heart murder statute under which he had been indicted. The indictment tracked the statutory language of Miss.Code Ann. § 97-3-19(b) (Rev.1994) and charged that he:
did willfully, unlawfully and feloniously by the commission of an act eminently dangerous to others and evincing a depraved-heart, regardless of human life kill Herman "Oogie" Carson by kicking, beating and stomping....
The basis for Goff's motion for the directed verdict was his argument that depraved-heart murder should not encompass a killing done with an intent to harm a specific individual but should only encompass killings done with great indifference to life in general, such as shooting a firearm into a crowd. The trial court denied the motion for a direct verdict, and Goff renewed his attack on the statute in his motion for a judgment notwithstanding the verdict or in the alternative a new trial.
¶ 11. The gravis of Goff's argument is that prior to Johnson v. State, 475 So.2d 1136 (Miss.1985) and Windham v. State, 602 So.2d 798 (Miss.1992), this State's law was that depraved-heart murder did not apply to murders where the intent to harm went to specific individuals. However, in these two cases, the Supreme Court expanded depraved-heart murder to include killings committed with intent to harm an individual.
[T]his Court can perceive no rational for characterizing a horrendously-violent act, like the one committed by Otis, as manslaughter rather than depraved-heart murder, simply because, under the traditional view the act must have been directed toward "human life in general" as opposed to one individual in particular. A distinction between the risk of death to one particular individual and the risk of death to more than one individual is a senseless and outmoded one which the Court properly discarded six years ago in Johnson v. State.

Windham, 602 So.2d at 803. See also Hums v. State, 616 So.2d 313, 320-321 (Miss.1993).
¶ 12. We find the trial court did not err in following the law of this State. This assignment of error is without merit.

III.
¶ 13. Goff contends that the trial court erred in not granting his motion for a judgment notwithstanding the verdict (JNOV) or in the alternative a new trial. He argues that the medical evidence does not support a jury finding that he kicked and stomped on Carson's head as he lay on the ground. Rather, he argues that the medical evidence shows Carson's injuries occurred either when he hit and/or kicked him as he was standing or when Carson fell to the ground. This he argues did not evidence such reckless disregard for life and that he could have foreseen death was a likely result. See Windham, 602 So.2d at 803.
¶ 14. Cases where depraved-heart has been found include assault with a hammer, Windham, 602 So.2d at 799, jail beating, Hums, 616 So.2d at 315, and shooting through a door, Clark v. State, 693 So.2d 927, 928 (Miss.1997). The State put forth a witness who testified she saw Goff stomping on the left-side of Carson's head as he lay on the ground. Another witness contradicted Goff's testimony that he only wore tennis shoes and said he wore boots. Additionally, Goff fled from the immediate area as people came outside from the Dock, and when he surrendered a short-time later he was barefoot.
¶ 15. Carson suffered minimal or no surface or injuries to his skin such as abrasions or bruises on his left-hand side of his head, neck and shoulder, but many such injuries on his right-hand side. Carson *784 also did not suffer breaks in his facial bones that Goff contends would have been present in a stomping. Goff's theory is that if he had stomped on the left-hand side of Carson's head as Carson lay on the ground, Carson would have had surface injuries to both sides of his face and/or broken facial because the ground would have caused injuries to the left-hand side as his foot caused injuries to the right-hand side.
¶ 16. The record does not support Goff's contention that the injuries could not have been caused by Goff's stomping Carson as he lay on the ground. Two treating neurosurgeons from the University of Mississippi Medical Center testified for the State and both concurred that it was not a medical certainty that Carson would have had surface abrasions on both sides of his head, face and neck if Goff had stomped on his head. Dr. Kevin Killough testified that Carson's injuries could have been caused by shearing force, such as a foot striking and then glancing off his head, rather than a perpendicular force of a foot stomping directly upon his head and driving the opposite side into the ground. He also testified that Carson's injuries were among the most serious he had treated.
¶ 17. Dr. George Mandybur adamantly refused to agree with Goff's theory of what injuries were consistent with stomping. He stated that in his opinion the left side of Carson's head could have been stomped upon without the right side receiving visible surface injuries, as the damage could have occurred to either the back of the head or the side of the head covered with hair. The following exchange took place:
Q: Well, if someone is stomping straight down on the head ... that's the angle, coming in straight on the other side, that would cause a crushing and abrasion on that side of the face?
A: It could, but also the head might bounce like a basket ball.
¶ 18. A motion for new trial deals with the weight of the evidence; our standard of review regarding a motion for new trial is stated in McClain v. State, 625 So.2d 774 (Miss.1993):
Matters regarding the weight and credibility of the evidence are to be resolved by the jury....
Moreover, the challenge to the weight of the evidence via motion for a new trial implicates the trial court's sound discretion. Procedurally such challenge necessarily invokes [Uniform Circuit and County Court Rule 10.05]. New trial decisions rest in the sound discretion of the trial court, and the motion should not be granted except to prevent an unconscionable injustice. We reverse only for abuse of discretion ....
McClain, 625 So.2d at 778-81 (citations omitted). In this case, the evidence that Goff acted with a depraved-heart in killing Carson is of sufficient weight that the trial court did not abuse its discretion in denying the motion for a new trial.
¶ 19. A motion for JNOV deals with sufficiency of the evidence; our standard of review concerning the trial court's denial of JNOV is also described in McClain:
In appeals from an overruled motion for JNOV the sufficiency of the evidence as a matter of law is viewed and tested in a light most favorable to the State. The credible evidence consistent with McClain's guilt must be accepted as true. The prosecution must be given the benefit of all favorable inferences that may be reasonably drawn from the evidence.... We are authorized to reverse only where, with respect to one or more of the elements of the offense charged, the evidence so considered is such that reasonable and fair-minded jurors could only find the accused not guilty.
McClain, 625 So.2d at 778 (citations omitted). The evidence could support reasonable jurors to find that Goff did inflict fatal injuries to Carson by hitting and kicking until he fell and then stomping on his head as he was lying helplessly on the ground. As such, this assignment is without merit.

*785 IV.
¶ 20. Goff asserts the trial court should have granted his motion for a change of venue. Motions for a change in venue are left to the trial court's discretion. Hickson v. State, 707 So.2d 536 (¶ 22) (Miss.1997); Fisher v. State, 481 So.2d 203, 215 (Miss.1985). The trial court should look to both the level of pre-trial publicity and prejudicial nature as well as the effect of the publicity on the venire persons. Holland v. State, 705 So.2d 307 (¶ 96) (Miss.1997). In this case, the trial court heard the testimony of ten witnesses who were demonstrative of the racial and geographical representation of Madison County after which the trial court stated:
I cannot say from what I've heard from these people who are representative of our jury pool that Mr. Goff cannot receive a fair trial. I just don't think the pre-trial publicity has been nearly as extensive as the defense maintains in their motion. I think most of the publicity occurred within the first couple of months of the incident. There is no evidence of any public clamor against Mr. Goff.
¶ 21. Although if we were sitting as the trial judge, we may well have ordered the venue changed. It is a close question. Nevertheless, it is a discretionary question, and the trial court is to look to the effect upon the venire persons. The factual record of the testimony of the ten witnesses supported his decision not to grant the change in venue. Moreover, our Supreme Court has only reversed upon a change of venue issue where the volume of publicity has both continued up to and even through trial as well as linked the defendant to other specific crimes involving inflammatory evidence or acts. Hickson, 707 So.2d at (¶ 24); Fisher, 481 So.2d at 219-20. Therefore, upon this record, we do not find that trial court abused its discretion. This assignment of error is without merit.

V.
¶ 22. Goff asserts that the trial court erred by allowing specific testimony concerning Carson's good character. Goff testified he acted in self-defense when he hit and kicked Carson. In rebuttal the State called two witnesses. This was permissible under M.R.E. 404(a)(2), but witnesses may only testify about their opinion of the victim's general reputation for peacefulness, and testimony going to specific instances is prohibited under M.R.E. 405. Day v. State, 589 So.2d 637, 643 (Miss.1991). Goff contends the trial court allowed the State to impermissibly solicit testimony going to specific instances. The trial court conferred with counsel outside the jury's hearing and ruled that the State could question witnesses by asking whether they knew of Carson's reputation for peacefulness, and following an affirmative response the State could ask whether the reputation was good or bad. Goff contends the following answers to whether the reputation was good or bad delved into specific instances: "[h]e wouldn't harm a fly;" "[h]e never really bothered anybody, really;" "[m]y opinion is he was a kind, gentle man." These three responses do not refer to specific instances. Instead they are colloquialisms used in everyday speech to describe a generally peaceful individual. Additionally, Goff waived any objection to these responses because he failed to either ask that the jury be admonished or that a limiting instruction be issued. Holland v. State, 705 So.2d 307 (¶ 134) (Miss.1997).
¶ 23. Finding none of the asserted errors have merit, we affirm the conviction and sentence.
¶ 24. THE JUDGMENT OF THE CIRCUIT COURT OF MADISON COUNTY OF CONVICTION OF MURDER AND SENTENCE OF LIFE IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE TAXED TO THE APPELLANT.
*786 McMILLIN, C.J., KING AND SOUTHWICK, P.JJ., BRIDGES, IRVING, MOORE, AND PAYNE, JJ., CONCUR. LEE, J., NOT PARTICIPATING.