# IN THE SUPREME COURT OF MISSISSIPPI

## NO. 2004-KA-02533-SCT

*JAMARCUS D. SHUMPERT*

*v.*

*STATE OF MISSISSIPPI*

| | |
|---|---|
| DATE OF JUDGMENT: | 12/3/2004 |
| TRIAL JUDGE: | HON. SHARION R. AYCOCK |
| COURT FROM WHICH APPEALED: | LEE COUNTY CIRCUIT COURT |
| ATTORNEY FOR APPELLANT: | JOHN CARL HELMERT, JR. |
| ATTORNEY FOR APPELLEE: | OFFICE OF THE ATTORNEY GENERAL |
| | BY: JOSE BENJAMIN SIMO |
| DISTRICT ATTORNEY: | JOHN R. YOUNG |
| NATURE OF THE CASE: | CRIMINAL - FELONY |
| DISPOSITION: | AFFIRMED - 06/29/2006 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | |

**BEFORE COBB, P.J., DICKINSON AND RANDOLPH, JJ.**

**COBB, PRESIDING JUSTICE, FOR THE COURT:**

¶1.     Jamarcus D. Shumpert, Conigan Judon, and Quatero Middlebrooks were indicted for the depraved heart murder of Jimmy Collier.   Judon and Middlebrooks pleaded guilty to a reduced charge, and a jury found Shumpert guilty of manslaughter by culpable negligence. Aggrieved by the outcome of the trial, Shumpert appeals to this Court.   We affirm the trial court.

## FACTS

¶2. On the evening of September 26, 2003, Shumpert, Judon and Alex Dean were sitting on Lisa Southward's porch in Tupelo, Mississippi. Collier arrived in front of the house, in a car driven by Stephen Tucker, then walked up to the porch and asked to purchase cocaine. Shumpert said there were too many police officers around and asked Collier to leave.

¶3. As Collier was leaving, a vehicle driven by Southward approached with Middlebrooks in the passenger seat. Collier approached the driver's side door of the vehicle to speak to Southward, and Shumpert shouted from the porch to Middlebrooks, telling him to hit Collier. Middlebrooks stepped out of the vehicle and struck the side of Collier's head or his neck.

¶4. At this point, the witnesses' testimony begins to diverge. Shumpert and Tucker said they saw Collier reach for something in his pants, and Shumpert said he hit Collier because he perceived this movement as threatening to Middlebrooks' safety. However, according to Dr. Stephen Hayne, a physician practicing in the fields of forensic and anatomic pathology, no weapon was found on Collier's person during examination. Tommy Morris, another witness, testified that Middlebrooks drove away after hitting Collier. Middlebrooks and Southward said Middlebrooks got back into the car after hitting Collier. Middlebrooks said he was not threatened by Collier.

¶5. After Shumpert struck Collier, causing him to fall to the pavement, there was testimony that Judon stomped or kicked the victim in the head, although Judon himself testified that he merely placed his foot on Collier's face. Morris testified that Shumpert participated in kicking Collier in the head, but no other witnesses saw this happen, and Judon testified that Shumpert

2

said nothing that motivated him to attack Collier. After the attack, Shumpert and Judon then turned and ran because, according to Shumpert, they thought Collier had some sort of weapon. Shumpert testified later that Collier never did anything to threaten, insult, or attack him. Shumpert was seen running across some railroad tracks with Judon after this incident, but he later returned to the porch and was told to leave. The next day Collier died from trauma to the head.

¶6. Judon and Middlebrook pleaded guilty to reduced charges. A jury found Shumpert guilty of manslaughter by culpable negligence, and he was sentenced to 20 years in the custody of the Mississippi Department of Corrections with five years suspended. The trial court subsequently rejected Shumpert's motion for a judgment notwithstanding the verdict or for a new trial. He now appeals to this Court, raising numerous issues which we have consolidated into the following categories: (1) sufficiency of the evidence; (2) errors pertaining to the jury instructions; (3) exclusion of "theft" evidence; (4) prosecutorial misconduct; and (5) cumulative error.

## ANALYSIS

### I.    SUFFICIENCY OF THE EVIDENCE

¶7. Shumpert argues the evidence is insufficient because he committed an intentional act, which cannot form the basis for a conviction of manslaughter by culpable negligence. In other words, if the jury was going to convict him of anything, it should have been depraved heart murder; therefore, the jury verdict was irrational. Hence, Shumpert argues the trial court erred when it refused to grant his motion for a directed verdict, a peremptory instruction, or a

3

judgment notwithstanding the verdict. On the issue of jury irrationality, the United States Supreme Court has said:

> inconsistent verdicts . . . should not necessarily be interpreted as a windfall to the Government at the defendant's expense. It is equally possible that the jury, convinced of guilt, properly reached its conclusion on the compound offense, and then through mistake, compromise, or lenity, arrived at an inconsistent conclusion on the lesser offense. But in such situations the Government has no recourse if it wishes to correct the jury's error; the Government is precluded from appealing or otherwise upsetting such an acquittal by the Constitution's Double Jeopardy Clause.
>
> Inconsistent verdicts therefore present a situation where "error," in the sense that the jury has not followed the court's instructions, most certainly has occurred, but it is unclear whose ox has been gored. Given this uncertainty, and the fact that the Government is precluded from challenging the acquittal, it is hardly satisfactory to allow the defendant to receive a new trial on the conviction as a matter of course.
>
> . . . there is no reason to vacate respondent's conviction merely because the verdicts cannot rationally be reconciled. Respondent is given the benefit of her acquittal on the counts on which she was acquitted, and it is neither irrational nor illogical to require her to accept the burden of conviction on the counts on which the jury convicted.

*United States v. Powell,* 469 U.S. 57, 65, 69, 105 S. Ct. 471, 83 L.Ed.2d 461 (1984) (citations omitted).

¶8.     This Court has adopted the rule that review of the sufficiency of the evidence is adequate protection from jury irrationality. *Holloman v. State,* 656 So. 2d 1134, 1141 (Miss. 1995). Further, a motion for J. N. O. V., peremptory instruction, and directed verdict all challenge the legal sufficiency of the evidence. *Hawthorne v. State,* 835 So. 2d 14, 21 (Miss. 2003). When reviewing the sufficiency of the evidence, this Court must ask whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact

4

could have found the essential elements of the crime beyond a reasonable doubt. ***Bush v. State,*** 895 So. 2d 836, 843 (Miss. 2005)*.* The proper remedy for a verdict based on insufficient evidence is for this Court to reverse and render. ***Id.***

¶9. In support of his argument Shumpert first cites ***Hurns v. State,*** 616 So. 2d 313, 315 (Miss. 1993), in which the defendant was convicted for beating a fellow inmate to death in jail. The medical examiner determined the cause of death to be massive trauma to the brain as a result of multiple blows to the head with a blunt object in a short period of time, and Hurns was found guilty of murder after the trial court denied his request that the jury be given an instruction for manslaughter by culpable negligence. ***Id.*** at 320. This Court rejected his argument on appeal, holding that the murder instruction was proper because his acts were intentional, not reflecting culpable negligence, defined as a flagrant and reckless disregard for the safety of others, or willful indifference to the injury liable to follow. ***Id.***

¶10. Shumpert also cites ***Goff v. State,*** 778 So. 2d 779 (Miss. Ct. App. 2000). The defendant in that case was convicted for hitting a bar patron and kicking him twice. ***Id.*** at 781. The jury was instructed on both murder and manslaughter, and the defendant requested an instruction on manslaughter by culpable negligence. ***Id.*** at 782. The court held he was not entitled to a culpable negligence instruction because his acts were intentional, rather than evidencing culpable negligence. ***Id.***

¶11. The third case cited by Shumpert is ***Sanders v. State,*** 781 So. 2d 114 (Miss. 2001). This case concerned a defendant found guilty of deliberate design murder. ***Id.*** at 116. He

argued that the trial court erred by not instructing the jury on manslaughter by culpable negligence. *Id.* at 119. This Court rejected that argument, pointing out that all the testimony revealed that the defendant intentionally hit the victim with a hammer, making an instruction on manslaughter by culpable negligence inappropriate. *Id.*

¶12. Shumpert argues that these cases require this Court to reverse and render. He claims that the State failed to prove a prima facie case for depraved heart murder, and should not have been allowed to fall back on manslaughter by culpable negligence when that instruction does not fit the facts of this case. The State made a general argument that the evidence was sufficient to sustain the verdict.

¶13. All three cases cited by Shumpert are distinguishable. In each, the defendant requested the instruction of manslaughter by culpable negligence, but that instruction was not given to the jury. In the current case, the jury was instructed on both depraved heart murder and culpable negligence manslaughter, and decided that manslaughter was more appropriate. In addition, there was conflicting evidence at trial, which makes it implausible on appeal to ascertain what version of the story the jury believed. Shumpert is asking this Court to make the broad declaration that intentional acts cannot form the basis for culpable negligence. However, "[c]ulpable negligence must be ascertained from the facts of each case, and no ironclad statement can be set forth as applicable to all classes of cases." *Sims v. State,* 149 Miss. 171, 115 So. 217, 219 (1928).

¶14. Shumpert also seeks to make a distinction between an intentional act leading to death and a negligent, or accidental act leading to death, arguing that because he intended to deliver

6

the blow to Collier, he cannot be guilty of manslaughter by culpable negligence. This attempted distinction is flawed because manslaughter by culpable negligence is "such gross negligence . . . as to evince a wanton or reckless disregard for the safety of human life, or such an indifference to the consequences of an act under the surrounding circumstances as to render such conduct tantamount to willfulness." *Evans v. State,* 562 So. 2d 91, 95 (Miss. 1990) (citations omitted). The only requirement is recklessness or a willful disregard for an unreasonable risk. *Campbell v. State,* 285 So. 2d 891, 893 (Miss. 1973). Furthermore, a recognized distinction between manslaughter by culpable negligence and depraved heart murder concerns the degree of mental culpability. *Windham v. State,* 602 So. 2d 798, 801 (Miss. 1992). The determination of a defendant's mental culpability is an issue properly resolved by the jury. *Morris v. State,* 748 So. 2d 143, 148 (Miss. 1999).

¶15. Shumpert admitted hitting Collier even though Collier never threatened, insulted, or attacked him. Shumpert said he did this because he thought Collier had some kind of weapon, and was going to hurt Middlebrooks. The jury could have determined this series of events constituted criminal negligence because Shumpert stated he did not intend to kill Collier, but nevertheless hit him and left him lying on the street without medical attention after the attacks. Morris testified that Shumpert, along with Judon, repeatedly kicked Collier while he was on the ground. The jury could have decided Shumpert was criminally negligent because he acted in concert with or instigated Judon and Middlebrooks in bringing about harm, and later death,

7

to Collier. Pursuant to the evidence presented, a rational juror could have determined that Shumpert was guilty of manslaughter by culpable negligence.

¶16. Manslaughter is a lesser-included offense of murder. *State v. Shaw,* 880 So. 2d 296, 304-05 (Miss. 2004); *Fairley v. State,* 871 So. 2d 1282, 1284-85 (Miss. 2003) (this Court held that an instruction which stated that culpable negligence manslaughter is a lesser-included offense of murder was properly submitted to the jury). Mississippi law requires trial courts to instruct juries on lesser-included offenses unless the lesser-included offense has no basis in evidence. *Clark v. State,* 693 So. 2d 927, 932 (Miss. 1997). There is a basis in evidence for the culpable negligence manslaughter charge because a blow delivered by one individual to another can be intentionally delivered, and at the same time negligently delivered with excessive force. *See Campbell,* 285 So. 2d at 893. Therefore, the trial court was required to give the instruction.

¶17. We see no reason for this Court to reverse Shumpert's conviction and render a contrary decision simply because he engaged in an action or some actions that may have been intentional. The jury was properly charged with determining which crime encompassed Shumpert's mental state, and the evidence in the record is sufficient to support this decision. Shumpert's argument is without merit.

## II. JURY INSTRUCTIONS

¶18. Jury instructions are to be read together and taken as a whole with no one instruction taken out of context. *Rushing v. State,* 911 So. 2d 526, 537 (Miss. 2005). Shumpert is

8

entitled to have jury instructions given which represent his theory of the case; however, this entitlement is limited in that the court may refuse an instruction which incorrectly states the law, is covered fairly elsewhere in the instructions, or is without foundation in the evidence. *Byrom v. State,* 863 So. 2d 836, 874 (Miss. 2003). Jury instructions are within the sound discretion of the trial court. *Goodin v. State,* 787 So. 2d 639, 657 (Miss. 2001).

### A)     The failure to instruct the jury on simple assault

¶19.    The proposed instruction on simple assault stated that: "[t]he Court instructs the jury that if Jamarcus Shumpert knowingly, recklessly or purposefully caused bodily harm to the decedent, then Jamarcus Shumpert is guilty of a simple assault." The trial judge refused to allow the jury instruction on simple assault, saying:

> I think we are faced with a unique set of facts in this case because this defendant admitted from the stand that he threw the punch or threw a punch. But to give this instruction, I've got to believe that simple assault is a lesser crime of manslaughter and that simple assault is a lesser crime or of murder, and in this instance, there is a death. And I'm going to deny the instruction.

¶20.    Shumpert gives three reasons why this instruction should have been given. He argues that simple assault is a lesser-included offense of murder, and therefore the jury should have been instructed on its elements. He cites *Clark,* 693 So. 2d at 932, for the rule that a lesser-included offense instruction is required unless, considering the evidence in the light most favorable to the accused, no rational jury could have found the defendant guilty of the lesser-included offense, or not guilty of the greater offense. While Shumpert correctly cites the *Clark* rule, he makes an incorrect assumption that assault is a lesser-included offense of

murder. In ***Wolfe v. State,*** 743 So. 2d 380, 387 (Miss. 1999), this Court reiterated the longstanding rule in Mississippi that assault is not a lesser-included offense of murder. Further, the jury was instructed on manslaughter, which is a lesser-included offense of murder. *See **Shaw,*** 880 So. 2d at 304-05. Therefore, this argument is without merit.

¶21. Second, Shumpert argues that a defendant is entitled to an instruction embodying his theory of the case if that instruction is supported by the evidence and is a correct statement of law, citing ***Montana v. State,*** 822 So. 2d 954, 962 (Miss. 2002). He claims there is sufficient evidence in the record to support a jury instruction on simple assault. From the record, it appears that Shumpert's theory of the case was that although he assaulted Collier, Judon actually caused Collier's death by kicking or stomping him when he was on the ground. In his opening statement, Shumpert's attorney laid out this theory:

> You will hear the evidence of how [Shumpert] hit a man once. Somebody else came along and kicked him. And I'll ask you not to find him responsible, Jamarcus here, I'll ask you not to find Jamarcus responsible for the actions of some other individual, and I'll ask you to find him not guilty.

Shumpert testified at trial that he hit Collier once, and denied kicking Collier along with Judon. Morris testified he saw Shumpert take part in stomping on Collier's head. The trial judge heard all the evidence and made the determination that the record did not justify an instruction on simple assault.

¶22. Assuming arguendo that Shumpert did not stomp or kick Collier along with Judon, there is still credible evidence that he aided and abetted in bringing about the death of Collier, making him guilty for Collier's death. *See **Doss v. State,*** 882 So. 2d 176, 196 (Miss. 2004)

10

(The law is well settled in this State that any person who is present, aiding and abetting another in the commission of a crime, is equally guilty with the principal offender).

¶23. Shumpert admitted to hitting Collier in the face, and there is evidence this blow knocked Collier to the ground, where he was left without medical attention. The evidence shows that Shumpert did shout at Middlebrooks to hit Collier, and Middlebrooks subsequently exerted a blow to Collier's head or neck. There is testimony that Shumpert and Judon kicked Collier in the head. Shumpert was later seen running with Judon after the beating, and when asked why they ran, Judon said he and Shumpert "knew we done did something bad."

¶24. Lesser offense instructions should not be granted indiscriminately, and only where there is an evidentiary basis in the record. *Gangl v. State,* 539 So. 2d 132, 136 (Miss. 1989). Further, "[u]nwarranted submission of a lesser offense [instruction] is an invitation to the jury to disregard the law." *Stewart v. State,* 909 So. 2d 52, 55 (Miss. 2005). We do not find the trial judge abused her discretion by refusing to instruct the jury on simple assault because the record does not support a charge of simple assault.

### B) The flight instruction

¶25. Pertaining to the flight instruction, the trial judge stated:

> [Shumpert] did flee in this case, and this instruction when read carefully states this: That he did flee from the scene. That's true. Then the flight of Shumpert is to be considered in connection with all other evidence in the case. You will determine from all the facts whether the flight was from a conscious sense of guilt or whether it was caused by other things, which is testimony that's in the record. The other things might very well be that he thought that Mr. Collier had something in his pockets. I'm going to allow P-7.

11

¶26. Shumpert cites the rule in Mississippi that flight instructions are only allowed when the flight is unexplained and considerably probative of guilt. *Liggins v. State,* 726 So. 2d 180, 182 (Miss. 1996). He also cites *Tran v. State,* 681 So. 2d 514, 519 (Miss. 1996), which says that flight instructions are particularly inappropriate when self-defense is claimed, because often the flight is to avoid retribution. Shumpert says he fled to avoid being hurt by Collier. He claims this is a valid reason to explain the flight, making the flight instruction inappropriate.

¶27. The State makes the counter-argument that the flight was evidence of consciousness of guilt, based on Judon's testimony that he and Shumpert ran because they "knew we done did something bad". The State also points out that Shumpert did not just flee from the vicinity of Collier, who by Shumpert's own admission had done nothing to threaten or menace him, but went by the laundromat in an effort to escape possibly being injured. The State asserts that the issue of self-defense was for the jury to decide, and the instruction on flight was proper for the jury to be fully informed of the pertinent law.

¶28. The only explanation Shumpert offers for the flight is that he was running to avoid being hurt by Collier. However, as the State correctly points out, Shumpert also said that Collier did nothing to threaten or harm him. In addition, Middlebrooks (the man that Shumpert claimed to be protecting when he hit Collier) said he was not threatened by Collier either. Further, the medical examiner never found a weapon of any kind on Collier, and Shumpert fled much further away than the parameter within which Collier, who was lying on the ground after being attacked, could have inflicted harm on him. All of this evidence supports the contention that the flight

12

was not explained by any reason other than consciousness of guilt. The trial court agreed and granted the flight instruction, and it did not err in doing so.

### C) The aiding and abetting instruction

¶29. With regard to the aiding and abetting instruction, the trial judge stated:

> The Court is going to allow P-6. There has been much discussion about this instruction in chambers, and I am -- have referred to the *Milano* decision. I think the instruction does properly instruct the jury that before they can find the defendant to be criminally responsible for acts of others it's necessary that he deliberately associate himself in some way with the crime, in other words, that he is a participant and not a mere spectator. And I think the proof is sufficient in this case to show that he was a participator, not a mere spectator.

¶30. Shumpert disagrees with the trial judge and argues that the instruction was not founded in evidence. Shumpert says he did nothing to incite, encourage, or approve of the crime that Middlebrooks or Judon committed. More specifically, he avers that there is no proof that Middlebrooks heard Shumpert tell him to hit Collier. Shumpert also argues that there was no common purpose behind the attacks on Collier. Because of this, he asserts the instruction on aiding and abetting was inappropriate.

¶31. The State counters by pointing out that Shumpert provided assistance by striking Collier, causing him to fall to the ground. In addition, the State correctly states that aiding and abetting does not require a common plan or scheme, unlike conspiracy, with which no one in this case has been charged.

¶32. That Shumpert aided and abetted in bringing about the death of Collier is supported by the evidence set forth supra. There is clearly enough evidence of aiding and abetting in the

13

record to preclude finding error from the instruction. The trial court did not err in giving the aiding and abetting instruction.

> D) *The failure to instruct the jury on causation*

¶33. Shumpert's final argument with regard to jury instructions concerns the trial court's failure to explicitly instruct the jury on causation. Shumpert also argues the instructions given should have been more precise in order to make it clear to the jury that if he did not aid and abet, then his blow(s) must have been the cause of death for him to be guilty. He cites *Thompson v. State,* 220 Miss. 200, 205, 70 So. 2d 341, 342 (1954), for the rule that a person cannot be criminally responsible for the death of a person wounded if the death resulted from an independent cause.

¶34. The trial court did not err. Both the manslaughter and murder instruction contained language of causation. Further, the aiding and abetting instruction adequately incorporated causation language necessary to inform the jury of the difference between being held liable as a principal versus being held liable as someone who aided and abetted. The jury instructions, when read as a whole, adequately stated the law and informed the jury of its proper role in the case.

### III. THE "THEFT" EVIDENCE

¶35. A trial judge enjoys a great deal of discretion as to the relevancy and admissibility of evidence. Unless the trial judge abuses this discretion so as to prejudice the accused, the Court will not reverse the ruling. *Walker v. State,* 878 So. 2d 913, 915 (Miss. 2004) (quoting *Jefferson v. State,* 818 So. 2d 1099, 1104 (Miss. 2002)).

14

¶36. Shumpert sought to introduce evidence to impeach Tommy Morris, a witness for the State, contending Morris reached into the pocket of Collier and stole some money. Shumpert argues this evidence is critical because Morris, who the State portrayed as a model citizen, was the only person who testified that Shumpert repeatedly kicked Collier. Shumpert concedes that the evidence can be used only for evaluation of Morris's perception of the events under Mississippi Rules of Evidence 608, which bars its use to attack his character. Shumpert claims the evidence is admissible to show that Morris was too consumed by his thoughts about taking the money from the pockets of a dying man to think clearly enough to correctly evaluate what transpired. In its motion to suppress, the State argued that Shumpert was attempting to use this evidence to inflame the jury, rather than for impeachment purposes. The State contends that the trial court's ruling not to admit the evidence was not an abuse of discretion and no substantial right of Shumpert's was violated.

¶37. The trial judge ruled that under M.R.E. 608 Morris could be questioned about this alleged theft, but his answer could not be attacked with extrinsic evidence. The trial judge properly read M.R.E. 608 to allow for impeachment by specific acts, other than criminal convictions, when the character trait of truthfulness of the witness is under attack. *See* M.R.E. 608(b). The trial judge correctly held that this can only be done by questioning the witness, excluding the use of extrinsic evidence. *See* M.R.E. 608(b). Morris was questioned on cross-examination about stealing money, and he denied it. The rules of evidence do not allow further questioning. Shumpert's argument that he sought to introduce this evidence to show that Morris was too concerned with stealing to accurately perceive what happened is not persuasive.

15

This evidence goes directly to the credibility of Morris's testimony. The trial court did not err in its ruling.

### IV. PROSECUTORIAL MISCONDUCT

¶38. Attorneys are allowed wide latitude in arguing their cases to the jury, but they are not allowed to employ tactics which are inflammatory, highly prejudicial, or reasonably calculated to unduly influence the jury. *Sheppard v. State,* 777 So. 2d 659, 661 (Miss. 2000). If this Court determines the prosecutor did engage in misconduct during closing argument, the inquiry is "whether the natural and probable effect of the improper argument is to create unjust prejudice against the accused so as to result in a decision influenced by the prejudice so created." *Id.,* citing *Ormond v. State,* 599 So. 2d 951, 961 (Miss. 1992).

¶39. Shumpert objected to, and now assigns error to, the following statement made by the prosecution during closing argument: "Self-defense? I do not know why Dee Dee and Cornell jumped on Jimmy. Dee Dee and Jimmy have been jumping on a lot of people lately." Shumpert says this statement constituted misconduct because it referred to prior bad acts in violation of M.R.E. 404(b). This rule prohibits prior bad acts as character evidence to show that the defendant acted in conformity with those acts on the present occasion. The State argues this one statement was not enough to command reversal.

¶40. The prosecutor's statement was not improper. He was referring to a statement from Middlebrooks that was admitted into evidence as exhibit 3 over a general objection. The prosecutor may comment on any facts introduced into evidence and may draw whatever

16

deductions and inferences that seem proper to him from the facts. *Flowers v. State,* 842 So. 2d 531, 554 (Miss. 2003).

¶41. However, even if this Court found the statement to be improper, there was no resultant prejudice. The statement constituted one sentence and did not refer to any specific incident, and it was already admitted into evidence in exhibit 3 over a general objection. Thus, we find this assignment of error is without merit.

## V. CUMULATIVE ERROR

¶42. In *Byrom,* 863 So. 2d at 847, this Court said:

> . . . upon appellate review of cases in which we find harmless error or any error which is not specifically found to be reversible in and of itself, we still have the discretion to determine, on a case by case basis, as to whether such error or errors, although not reversible when standing alone, may when considered cumulatively require reversal because of the resulting cumulative effect.

¶43. A criminal defendant is not entitled to a perfect trial, only a fair one. *Sand v. State,* 467 So. 2d 907, 911 (Miss. 1985). In this case, we have not found harmless error or any error. This argument without merit.

## CONCLUSION

¶44. We affirm the trial court on all issues. The evidence was sufficient to sustain the conviction for manslaughter by culpable negligence; the trial court did not err with respect to the jury instructions; the "theft" evidence was properly excluded; and the prosecutor's statement in closing argument did not constitute misconduct. Further, because there were no errors committed by the trial court, there is no cumulative error. Therefore, we affirm the trial court's judgment.

17

¶45. **CONVICTION OF MANSLAUGHTER BY CULPABLE NEGLIGENCE AND SENTENCE OF TWENTY (20) YEARS WITH FIVE (5) YEARS SUSPENDED, WITH CONDITIONS, FIVE (5) YEARS ON POST-RELEASE SUPERVISION, IN THE CUSTODY OF MISSISSIPPI DEPARTMENT OF CORRECTIONS AND PAYMENT OF A FINE OF $2500.00 AND COURT COSTS, AFFIRMED.**

**SMITH, C.J., WALLER, P.J., DIAZ, EASLEY, DICKINSON AND RANDOLPH , JJ., CONCUR. GRAVES, J.,CONCURS IN RESULT ONLY. CARLSON J., SPECIALLY CONCURS WITH SEPARATE WRITTEN OPINION JOINED BY WALLER, P.J., DIAZ, EASLEY AND DICKINSON, JJ.; GRAVES JOINS IN PART.**

**CARLSON, JUSTICE, SPECIALLY CONCURRING:**

¶46. While I unhesitatingly join my colleagues in the majority in an excellently written opinion affirming Jamarcus Shumpert's conviction and sentence for culpable negligence manslaughter, I write separately to once again emphasize my dislike of the so-called flight instruction. As correctly concluded in the majority opinion, the learned trial judge, in quite appropriately analyzing the evidence before the court at the time of the jury instruction conference, acted consistent with our case law in granting the State's proposed flight instruction. However, in my opinion the State is rolling the dice, as far as potential reversible error, each time it submits a proposed flight instruction to the trial judge for consideration.

¶47. In *Randolph v. State*, 852 So.2d 547, 567-68 (Miss. 2002) (Carlson, J., specially concurring), I stated:

> While I agree with the majority that the giving of the "flight instruction" was proper, based on the facts and circumstances of this particular case, and the applicable case law, the use of the flight instruction in this state can be described in one word-"dangerous." In my years of experience as a trial judge, the flight instruction was very seldom requested by the prosecution and almost

never given. It simply is not needed. While evidence of flight might be relevant, no legitimate purpose is served by the jury receiving an instruction from the trial court (which heightens the importance of the evidence in the eyes of the jury) highlighting for the jury the fact that the jury can consider evidence of flight as "a circumstance of guilt or guilty knowledge" when "that flight is unexplained and somehow probative of guilt or guilty knowledge." *See Reynolds v. State,* 658 So.2d 852, 856 (Miss. 1995); *Fuselier v. State,* 468 So.2d 45, 57 (Miss. 1985). The term "unexplained flight" is somewhat nebulous, anyway, and a trial court, by giving a flight instruction, simply puts itself in a position of possibly placing reversible error in an otherwise clean record. If a trial court persists in giving a flight instruction, I suggest that it do so with great caution.

*Id.* at 567-68.

¶48.    This Court recently stated:

However, a flight instruction is appropriate only where the flight is unexplained and somehow probative of guilt or guilty knowledge. *Id.* Therefore, evidence of flight is inadmissible where there is an independent reason for the flight. *Id.* Also, it is well settled that evidence of flight or escape is admissible as an exception to M.R.E. 404(b) in order to show guilty knowledge. *Davis v. State,* 722 So.2d 143, 145 (Miss. 1998); *Mariche v. State,* 495 So.2d 507, 508 (Miss. 1986) (citing *Lee v. State,* 457 So.2d 920, 923 (Miss. 1984)); *Hill v. State,* 432 So.2d 427 (Miss. 1983). While evidence of flight is admissible under Rule 404(b), it must be filtered through M.R.E. 403. *See Ford v. State,* 555 So.2d 691 (Miss.1989). Rule 403 provides:

> Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence.

M.R.E. 403. In determining whether to admit evidence of flight under Rule 403, the trial court is afforded great discretion. *Foster v. State,* 508 So.2d 1111, 1118 (Miss.1987).

*Shaw v. State*, 915 So.2d 442, 447 (Miss. 2005).  In *Shaw*, we went on to state:

19

Generally, we have upheld evidence of flight as well as flight instructions only where there was no independent reason or basis for flight. *See Jimpson v. State,* 532 So.2d 985 (Miss. 1988); *Mariche v. State,* 495 So.2d 507 (Miss. 1986). Because Shaw possessed a sufficient, independent basis for his flight, we hold that the trial court erred in allowing testimony of his escape to be presented to the jury in order to infer guilt or guilty knowledge to the charge of capital murder.

While acknowledging that it was error to allow the flight testimony, we conclude that such error was harmless beyond a reasonable doubt. A thorough review of the record reveals that Shaw's two companions, Joseph and Reginald, testified that Shaw murdered Duffie. Shaw was placed at the scene of the murder by other corroborating evidence. The bullet extracted from Joseph's knee was fired from the same weapon used to kill Duffie. In sum, the evidence of Shaw's flight pales in comparison to more direct evidence of his guilt. Under the facts before us, we hold that admission of Shaw's escape was harmless error.

*Id.* at 448. However, in *Walker v. State*, 913 So.2d 198, 234 (Miss. 2005), we stated that

"[t]his Court is not prepared to condemn flight instructions. We caution trial courts to only

allow such instructions in the rarest of cases."

¶49.    Finally, in reversing an aggravated assault/armed robbery conviction, based, in part, on

the erroneous giving of a flight instruction, this Court stated:

At trial, Liggins's counsel specifically objected to the deliverance of the flight instruction by pointing out that more than one incident could have been reason for the flight. This Court has established that flight generally is admissible as evidence of consciousness of guilt. *Fuselier v. State,* 702 So.2d 388, 390 (Miss. 1997) [hereinafter *Fuselier III* ]; *see also Williams v. State,* 667 So.2d 15, 23 (Miss. 1996). Yet, pursuant to such an objection, this Court reasons that "an instruction that flight may be considered as a circumstance of guilt or guilty knowledge is appropriate only where that flight is unexplained and somehow probative of guilt or guilty knowledge." *Fuselier v. State,* 468 So.2d 45, 56-57 (Miss. 1985) [hereinafter *Fuselier I* ], *see also Reynolds v. State,* 658 So.2d 852, 856 (Miss. 1995). When determining whether a flight instruction is appropriate, we further have explained that two considerations are paramount: (1) only unexplained flight merits a flight instruction; and (2) flight instructions

20

are to be given only in cases where that circumstance has considerable probative value. **Banks v. State**, 631 So.2d 748, 751 (Miss. 1994); **Pannell v. State**, 455 So.2d 785, 788 (Miss. 1984); **Tran v. State**, 681 So.2d 514, 519 (Miss. 1996); *see also* **Mack v. State**, 650 So.2d 1289, 1308 (Miss. 1994); *and see* **Brown v. State**, 690 So.2d 276, 294 (Miss. 1996). A flight instruction is appropriate where flight is "highly probative" to the facts of the particular case. **Fuselier III**, 702 So.2d at 390. Evidence of flight is inadmissible where, as in this case, there is an independent reason for flight known by the court which cannot be explained to the jury because of its prejudicial effect upon the defendant. **Id.** Indeed, in **Fuselier I**, we stated the turning principle in this case:

> Fuselier was obviously put in a no-win situation by either being required to explain his flight and the fact that he was a prison escapee or not explaining the flight and subjecting himself to a flight instruction. Here, because the court was aware of an explanation for Fuselier's flight, which was at that time inadmissible, we are of the opinion that the flight instruction should not have been granted.

**Fuselier I**, 468 So.2d at 57.

Plenty of evidence exists that Liggins may not have known from what he was fleeing. The record reflects Liggins's concern about carrying a weapon, gambling, drinking, and involvement with drugs, not to mention the counts on which this case is based. The record further reflects that Liggins was "under indictment in Cause Number 11,960-V from October 1994 for sale of cocaine as an offense that happened on August the 12th, 1994." Given such prejudicial information, Liggins's September 23 flight may have been from guilt of selling cocaine, rather than the counts at issue in this case.

¶50.    This case is best summed by our own words:

> … To paraphrase previous considerations by this Court, no person accused, however angry the people, however evil the crime, regardless of how strong the appearance of guilt, can be denied the full protection of the law and a fair and orderly trial.

**Fuselier III**, 702 So.2d at 394.

**Liggins v. State**, 726 So.2d 180, 183-84 (Miss. 1998).

¶51. In sum, I can only imagine how many (or how few) criminal cases have been tried in this state, where the jury, in privately deliberating in the jury room, came to the conclusion, that "well, this might be a close case of the defendant's guilt, but because of this flight instruction that the judge gave us, let's find the defendant guilty." Stated differently, if the State of Mississippi, represented by the elected District Attorney in any one of our twenty-two circuit court districts, is concerned about whether sufficient evidence has been presented in a particular case to convince the jury of the defendant's guilt, to the extent that the State is willing to run the serious risk of placing the trial court in error by submitting a flight instruction, then, in my opinion, the State must have a weak case which is otherwise undeserving of a conviction.

¶52. With this having been said, I concur in the majority opinion which affirms Jamarcus Shumpert's conviction and sentence for the crime of manslaughter by culpable negligence.

**WALLER, P.J., DIAZ, EASLEY AND DICKINSON, JJ., JOIN THIS OPINION. GRAVES, J., JOINS THIS OPINION IN PART.**