CHANDLER, J.,
for the Court.
¶ 1. Andre Cabrere was convicted of robbery in the Panola County Circuit Court and sentenced to seven years’ imprisonment. Cabrere appeals, raising the following issues:
I. WHETHER THE CIRCUIT COURT ERRED IN ADMITTING THE RADIO LOGS INTO EVIDENCE
II. WHETHER THE CIRCUIT COURT ERRED IN ADMITTING THE 911 TRANSCRIPT INTO EVIDENCE
III. WHETHER THE EVIDENCE SUPPORTS A ROBBERY CONVICTION
¶ 2. Finding no error, we affirm.
FACTS
¶ 3. Andre Cabrere was shopping at Friedman’s Jewelry Store in Batesville, Mississippi. He asked to see some wedding rings, so Lawanda Mills, the store clerk, gave him two rings. When he asked for more, Mills said she could not give Cabrere more than two at a time. Mills was wearing a diamond ring, which Cabr-ere took from her finger, and he left the store with all three rings. Jena Lindsay, another employee at Friedman’s, called 911 to report a robbery. She told the 911 operator that the suspect was in a late model Monte Carlo traveling north on Interstate 55.
¶ 4. Lieutenant David Hall of the Sou-thaven Police Department saw a gray late model Monte Carlo going north on High *1064 way 51 from Rasco Road and stopped the vehicle. Koalis Isby was the driver of the vehicle, and Cabrere was a passenger. Isby and Cabrere were taken to the Sou-thaven Police Department and later transported to the Batesville Police Department. Sergeant Sharon Sparks conducted an inventory of the car but did not find the rings in the automobile. The jewelry was never recovered.
¶ 5. Cabrere was tried and convicted of the charge of robbery. The court sentenced Cabrere to seven years of imprisonment and five years of post-release supervision.
ANALYSIS
I. WHETHER THE CIRCUIT COURT ERRED IN ADMITTING THE RADIO LOGS INTO EVIDENCE
¶ 6. At trial, the State called Beverly Pope, the communications supervisor of the Batesville Police Department. Pope’s responsibility is to oversee the dispatch room and audio equipment and insure that all calls are properly logged.
¶ 7. The radio log of the 911 call from Friedman’s contained information describing the robber, the location of the robbery, and location and description of the car in which the robber fled. The radio log described what law enforcement officers perceived and what actions they took following the report of the robbery. The court entered the radio log into evidence over Cabrere’s objection.
¶ 8. The radio log was a record of regularly conducted business activity. It was therefore admissible under the business records exception to the hearsay rule. M.R.E. 803(6). Such records are admissible upon the showing of the following foundational requirements: (1) the statement is in written or recorded form; (2) the record concerns acts, events, conditions, opinions or diagnoses; (3) the record was made at or near the time of the matter recorded; (4) the source of the information had personal knowledge of the matter; (5) the record was kept in the course of regular business activity; and (6) it was the regular practice of the business activity to make the record. Ferguson v. Snell, 905 So.2d 516, 519(¶ 10) (Miss.2004).
¶ 9. Pope testified that it is customary for the Batesville Police Department to prepare a radio log during a 911 call. In establishing the foundational requirements to establish the reliability of the radio log, the following exchange occurred:
Q: [State] Mrs. Pope, I have handed you two pages. Are you able to recognize what those documents are?
A: [Pope]: Yes, sir.
Q: What are they?
A: They are the radio logs that was [sic] kept the day of the robbery call at Friedman’s.
Q: And whose name is up there?
A: Pope.
Q: Is that you?
A: Yes, sir.
Q: Did you make that radio log?
A: Yes sir.
¶ 10. The radio logs were admissible as a business records exception to the hearsay rule. This issue is without merit.
II. WHETHER THE CIRCUIT COURT ERRED IN ADMITTING THE 911 TRANSCRIPT INTO EVIDENCE
¶ 11. The State introduced into evidence the transcript of the 911 call that Lindsay made to the Batesville Police Department immediately after the robbery. Cabrere objected on the grounds of hearsay. The circuit court overruled the objection on the grounds that the communications fell under the present *1065 sense impression and excited utterance exceptions to the hearsay rule.
¶ 12. A present sense impression is “[a] statement describing or explaining an event or condition made while the declar-ant was perceiving the event or condition, or immediately thereafter.” M.R.E. 803(1). In Clark v. State, 693 So.2d 927, 932 (Miss.1997), the Mississippi Supreme Court held that the transcript of the victim’s 911 call to the emergency operator fell within the present sense impression to the hearsay rule, because the events leading up to the call were sufficiently contemporaneous to fit within the exception.
¶ 13. An excited utterance is a “statement relating to a startling event or condition made while the declarant was under the stress of the excitement caused by the event or condition.” M.R.E. 803(2). The Mississippi Supreme Court in Clark held that the transcript of the 911 call also fell within the excited utterance exception to the hearsay rule “since it relates to the events that were unfolding as it was made, it was made while Meunier [the victim] was in an excited state, and it was made contemporaneously with the event.” Id. The circuit court was within its discretion in admitting the transcript of the 911 call into evidence.
III. WHETHER THE EVIDENCE SUPPORTS A ROBBERY CONVICTION
¶ 14. A person is guilty of robbery when he “feloniously take[s] the personal property of another, in his presence or from his person and against his will, by violence to his person or by putting such person in fear of some immediate injury to his person.” Miss.Code Ann. § 97-3-73 (Rev.2000). Cabrere claims that the facts of the case do not support a robbery conviction because there was no evidence proving that he took the rings against the will of Mills and by violence.
¶ 15. Mills testified that she gave Cabr-ere two rings. When Cabrere asked to see a third ring, Mills told him that Cabr-ere had to give her back one of the two rings he already had in his possession. In response, Cabrere pulled a third ring off Mills’ finger and ran out of the store. Mills testified that this action was taken against her will. She also testified that she was scared, and she screamed. When asked what made her scared, Mills said, “Because he took it off my finger, the ring off my finger.”
¶ 16. “When the victim is aware that someone is attempting to take property from their person and does not indicate any consent to the taking, the crime of pickpocketing or larceny is elevated to robbery because violence or the threat of violence, even though slight, was a factor in the taking.” Chaney v. State, 739 So.2d 416, 418(¶ 8) (Miss.Ct.App.1999). In the present case, the facts support a conviction of robbery because Mills saw and felt Cabrere take the ring off her finger. She was aware that he was taking her ring and she did not consent to the taking. This issue is without merit.
¶ 17. THE JUDGMENT OF THE CIRCUIT COURT OF PANOLA COUNTY OF CONVICTION OF ROBBERY AND SENTENCE OF SEVEN YEARS’ IMPRISONMENT, SENTENCE TO RUN CONSECUTIVELY WITH ALL SENTENCES PREVIOUSLY IMPOSED, ALL IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS, FOLLOWED BY FIVE YEARS’ POST-RELEASE SUPERVISION, IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO THE APPELLANT.
*1066 KING, C.J., LEE AND MYERS, P.JJ., IRVING, GRIFFIS, BARNES AND ISHEE, JJ., CONCUR. SOUTHWICK AND ROBERTS, JJ., NOT PARTICIPATING.