GRIFFIS, P.J.,
for the Court:
¶ 1. Derrick Hunter was convicted of the murder of his longtime girlfriend, Temería Ingram, under Mississippi Code Annotated section 97 — 3—19(l)(b) (Supp.2015). Hunter now appeals to this Court and argues that the verdict was against the sufficiency and weight of the evidence and that the trial court erred in allowing two witnesses to testify at trial after the State failed to comply with discovery deadlines. We find no error and affirm.
FACTS
¶2. On the night of August 23, 2013, Ingram and her two children arrived home after watching a football game at a friend’s house. Sometime later, a family friend, Shameika Brown, came to Ingram’s home and spent a few hours there. Either during Brown’s time at the house or as she was leaving, Hunter arrived at the home intoxicated.
¶ 3. Hunter testified that he and Ingram had an altercation after Brown left for the evening. The fight became physical and resulted in Ingram’s death. After realizing that Ingram was unconscious, Hunter woke his daughter, Brendarrius Ingram, and told her to remain calm and come help him lift Ingram onto the bed. When Hunter realized that they could not move Ingram, he instructed Brendarrius to go to the neighbor’s house and call 911.
¶ 4. When paramedics arrived, they found Ingram dead, lying face down next to her bed. According to the paramedics, Ingram’s body appeared to have rigor mortis in its extremities. Once police officers arrived on the scene, Hunter told them that he kicked Ingram in the neck. Hunter was arrested and charged with murder.
¶ 5. During trial, Dr. Mark LeVaughn testified that Ingram died of strangulation and noted that she had multiple abrasions, scrapes, and bruises on her body, as well as a bite mark on her back. In his own defense, Hunter testified that he did kill Ingram but did so in the heat of passion, as he suspected that Brown and Ingram had an intimate relationship. This suspected relationship was not corroborated by any other -witness.
¶ 6. The jury found Hunter guilty of second-degree murder, and he was sentenced to life in the custody of the Mississippi Department of Corrections. After trial, Hunter filed a motion for a judgment notwithstanding the verdict, challenging the verdict and certain testimony allowed at trial. The motion was denied.
ANALYSIS

I. Whether the evidence was sufficient to support Hunter’s conviction.

¶ 7. Hunter first argues that the evidence was insufficient to support the second-degree-murder conviction. Essentially, he claims that he is guilty of culpable-negligence manslaughter rather than second-degree murder.
¶ 8. When the sufficiency of the evidence is challenged, “the critical inquiry is whether the evidence shows beyond a reasonable doubt that [the] accused committed the act charged, and that he did so under such circumstances that every element of the offense existed; and where the evidence fails to meet this test it is insufficient to meet a conviction.” Sands v. State, 62 So.3d 374, 377 (¶ 14) (Miss.2011) (citation and internal quotation marks omitted). This Court “is not required to decide whether it thinks the State proved the defendant’s guilt.” Id. at (¶ 15). In viewing the evidence in the light most favorable to the prosecution, the relevant *677 question is whether “any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.” Id. In reviewing the elements of the crime, the supreme court has instructed:
If the facts and inferences point in favor of the defendant on any element of the offense with sufficient force that reasonable [jurors] could not have found beyond a reasonable doubt that the defendant was guilty, then the proper remedy is for the appellate court to reverse and render. But if the evidence shows that reasonable and fair-minded persons, while considering the beyond-a-reasonable-doubt standard in the exercise of impartial deliberations, might have reached different conclusions on every element of the offense, then the evidence will be deemed to have been sufficient.
Id. at 377-78 (¶ 16) (internal citations and quotation marks omitted).
¶9. Hunter was convicted of second-degree murder pursuant to section 97-3-19(l)(b), which defines second-degree murder as “[t]he killing of a human being without the authority of law by any means or in any manner ... [w]hen done in the commission of an act eminently dangerous to others and evincing a depraved heart, regardless of human life, although without any premeditated design to effect the death of any particular individual.... ” This is commonly referred to as depraved-heart murder.
¶ 10. “The chief distinction between murder" and manslaughter is the presence of deliberation and malice in murder and its absence in manslaughter. Also, manslaughter by culpable negligence is distinguished from depraved-heart murder by the degree of mental culpability of a defendant.” Johnson v. State, 52 So.3d 384, 391 (¶ 17) (Miss.Ct.App.2009) (internal citation and quotation marks omitted). Generally, “[t]he determination of a defendant’s mental culpability is an issue properly resolved by the jury.” Shumpert v. State, 935 So.2d 962, 967 (¶ 14) (Miss.2006). The Court notes that the jury was not instructed on culpable-negligence manslaughter, which Hunter argues is most like the crime he committed. Instead, the jury was instructed on heat-of-passion manslaughter. Hunter does not assert any error as to jury instructions, and it does not appear from the record that he sought a culpable-negligence-manslaughter instruction.
- ¶ 11. Viewing the evidence in the light most favorable to the prosecution, the Court finds that a rational juror could have concluded that all of the elements of depraved-heart murder were satisfied. The State presented evidence that Ingram was beaten and strangled through Dr. Le-Vaughn’s testimony and photographs of Ingram’s injuries. Dr. LeVaughn testified that the scratches on Temeria’s neck were consistent with death by strangulation. Brendarrius testified that her mother, days before the killing, told her to call 911 if she heard any screaming. Further, Hunter himself admits that he killed Ingram while they were fighting. Officers who arrived at the scene testified that Hunter told them that he kicked Ingram in the neck. The jury, having heard all of the evidence, resolved the question of Hunter’s mental culpability.' The evidence was sufficient to establish the elements of depraved-heart murder. Accordingly, we find no error.

II. Whether the verdict was against the overwhelming weight of the evidence.

¶ 12. Next, Hunter argues that the verdict was against the overwhelming weight of the evidence. The State contends that Hunter failed to make a motion for a new *678 trial, thereby barring his claim .as to the weight of the evidence. We agree and find that the issue is not properly before the Court.
¶ 13. “The contention that the verdict is against the overwhelming weight of the evidence must first be raised in the defendant’s'motion for a new trial.” Beckum v. State, 917 So.2d 808, 813 (¶ 14) (Miss.Ct.App.2005). “A claim that the verdict was against the weight of the evidence must be first presented to the trial court since that court is best positioned to'make an informed decision as to such issue, having had the benefit of hearing the evidence first-hand.” Collins v. State, 858 So.2d 217, 218-19 (¶ 5) (Miss.Ct.App.2003). This Court is “limited to deciding whether the trial court ... has abused the discretion afforded to that court in making such a determination.” Id. at 219 (¶ 5). Because Hunter never made a motion for a new trial and the issue was never heard in the trial court, he is procedurally barred from raising it now on appeal.

III. Whether the trial court erred in allowing two State witnesses to testify.

¶ 14. Hunter next argues that the trial court erred in allowing Mary Ingram and Brendarrius to testify at trial. The State sent an updated witness list to Hunter’s defense, team the Friday before trial began. It included a new name, Mary Ingram. It also expanded upon the testimony. expected of Brendarrius. Hunter contends that these additions came well after the settled discovery deadline and resulted in an unfair surprise, while the State maintains that they notified Hunter of the additions when they themselves became aware.
¶ 15. On appeal, this Court is limited to “reversing a trial court’s decision regarding discovery violations only upon finding, an abuse- of discretion. Gray v. State, 799 So.2d 53, 60 (¶ 26) (Miss.2001). The rules of discovery provide procedures for discovery violations and “vest the trial court with substantial discretion....” Kornegay v. State, 816 So.2d 405, 408 (¶ 8) (Miss.Ct.App.2002); see also URCCC 9.04(1). “The evident purpose of the rules is to permit a case to proceed to conclusion expeditiously, even in the face of discovery problems, when there.is a viable alternative to a substantial delay that preserves the fundamental rights of the parties.” Id. When a party claims that there was late discovery, “the court’s first step is to provide counsel a reasonable opportunity to review the information and, hopefully, to devise a trial strategy to meet the previously-undisclosed evidence.” Id. After reviewing the evidence, if the defense attorney needs additional time.to prepare, he must inform the court. Id.
¶ 16. Initially, Hunter objected to Bren-darrius’s testimony prior to her taking the stand. The defense was allowed to speak to ’Brendarrius over lunchtime, and the trial court instructed the defense to make any further objections after the interview. The defense did not make any further objections to Brendarrius taking the stand, and the trial proceeded. Further, this Court is not privy to the discovery provided to the defense regarding Brendarrius’s testimony and cannot determine if it was lacking compared to her testimony at trial.
¶17.. As to Mary’s testimony, Hunter continually objected to her taking the witness stand. Again, the trial court allowed defense counsel -to speak with Mary prior to her testimony before the jury.- Hunter did-not request a continuance or mistrial after this interview but continued to object to Mary’s testimony, and the trial court overruled the objection *679 and allowed her to testify. • According to Uniform Rule of Circuit and County Court 9.04(I)(2), if, after interviewing the witness, “the defense claims unfair surprise or undue prejudice ..., the court shall, in the interest of justice and absent unusual circumstances, exclude the evidence or grant a continuance ... or grant a mistrial.” Here, Hunter asked that the evidence be excluded.
¶ 18. The trial court erred by failing to exclude Mary’s testimony. “However, [this] error[] [was] harmless because the evidence was so overwhelming that the jury could have sustained a conviction” even without Mary’s -testimony. Isom v. State, 928 So.2d 840, 845 (¶ 15) (Miss.2006). And Hunter has not shown that the testimony “worked to his detriment.” Jones v. State, 669 So.2d 1383, 1392 (Miss.1995). Essentially, the only new information pro-; vided through Mary’s testimony was that during a conversation with Hunter days after Ingram’s death, Hunter told her that he was high on the night he killed Ingram. Later in trial, Hunter testified that he was not high, but he was intoxicated. Mary’s testimony was not necessary to Hunter’s conviction; the facts as stated above were sufficient. Therefore, the trial court’s admittance of Mary’s testimony, while in error, was harmless.
¶ 19. This Court finds that there was sufficient evidence to support Hunter’s conviction of second-degree murder. While the trial court erred in allowing a witness listed on the eve of trial to testify, the error was harmless as Hunter’s conviction was supported with overwhelming evidence. Hunter’s conviction is affirmed.
¶ 20. THE JUDGMENT OF THE CIRCUIT COURT OF HUMPHREYS ' COUNTY OF CONVICTION OF MURDER AND SENTENCE OF LIFE IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO HUM-PHREYS COUNTY.
LEE, C.J., IRVING, P.J., BARNES, ISHEE, CARLTON, FAIR, JAMES AND WILSON, JJ., CONCUR. GREENLEE, J., NOT PARTICIPATING.