# IN THE COURT OF APPEALS OF THE STATE OF MISSISSIPPI

## NO. 2017-KA-00067-COA

**EARNEST STUCKEY**                                                    **APPELLANT**

**v.**

**STATE OF MISSISSIPPI**                                               **APPELLEE**

DATE OF JUDGMENT:            12/13/2016
TRIAL JUDGE:                 HON. W. ASHLEY HINES
COURT FROM WHICH APPEALED:   WASHINGTON COUNTY CIRCUIT COURT
ATTORNEY FOR APPELLANT:      OFFICE OF STATE PUBLIC DEFENDER
                             BY: ERIN ELIZABETH BRIGGS
ATTORNEY FOR APPELLEE:       OFFICE OF THE ATTORNEY GENERAL
                             BY: KAYLYN HAVRILLA MCCLINTON
DISTRICT ATTORNEY:           WILLIE DEWAYNE RICHARDSON
NATURE OF THE CASE:          CRIMINAL - FELONY
DISPOSITION:                 AFFIRMED - 04/17/2018
MOTION FOR REHEARING FILED:
MANDATE ISSUED:

### BEFORE IRVING, P.J., FAIR AND WESTBROOKS, JJ.

### WESTBROOKS, J., FOR THE COURT:

¶1.     The grand jury of Washington County indicted Earnest Stuckey for one count of first-degree murder with a firearm enhancement. Following a jury trial, Stuckey was convicted of second-degree murder with a firearm enhancement and sentenced to forty years in the custody of the Mississippi Department of Corrections (MDOC) and five years for the firearm enhancement, to run consecutively. Stuckey filed a motion for a judgment notwithstanding the verdict (JNOV), or for a new trial, which the trial court denied. Stuckey timely appeals. After review of the record, we affirm.

**FACTS AND PROCEDURAL HISTORY**

¶2.     In late 2013 or 2014, Stuckey met Jennifer Triplett. The pair began dating and moved in with each other in Greenville, Mississippi. They often referred to each other as "husband" and "wife." Jennifer's brother, Arthur Triplett,[1] would stay with Stuckey and Jennifer from time to time, and several witnesses testified that Stuckey and Arthur had a good relationship. Sharnika Laws, Arthur's niece, testified that she considered Stuckey and Arthur to be friends, and Stuckey also referred to Arthur as his "brother-in-law."

¶3.     In January 2015, Jennifer, Stuckey, Arthur, Sharnika, and Sharnika's daughter were visiting out at Jennifer and Stuckey's home. Jennifer testified that some of the guests were consuming beer and alcohol. At some point in the evening, Clifford "Cliff" Gray stopped by the home. Stuckey testified that Arthur and Cliff were involved in a heated exchange regarding loud music that Cliff was playing when he entered Jennifer and Stuckey's home.

¶4.     Jennifer testified that shortly after this exchange, everyone left except Arthur and Stuckey. Jennifer stated that Clifford left, because she called the police after Cliff and Arthur's brief exchange. Jennifer testified that while she was in her daughter's room she heard Stuckey and Arthur loudly yelling. Jennifer stated that she left the house and drove to a gas station because she had a headache. After about ten minutes, Jennifer's niece, Sharnika, arrived at the gas station.

¶5.     Sharnika testified that after speaking with Jennifer at the gas station, she drove to Jennifer's home to locate Arthur. Sharnika stated that as soon as Stuckey opened the door,

---

[1] Arthur Triplett also was referred to as "Uncle June" in the record.

2

she saw a big puddle of blood at the front door and that when she asked Stuckey about Arthur's whereabouts, Stuckey replied, "I shot him." Further, Sharnika stated that Stuckey falsely informed her that an ambulance came to pick up Arthur. She stated that she believed him because Stuckey's demeanor was calm. However, moments later Sharnika and her Aunt Marsha found Arthur lying in the street right down from Jennifer and Stuckey's home. Arthur had been shot, and he was bleeding. Sharnika stated that she tried to stop the bleeding by applying pressure to the wound while Marsha prayed. Shortly after, the police and the ambulance arrived to care for Arthur; however, Arthur later died from his injuries.

¶6.     Cordell Daniels, an officer with the Greenville Police Department at the time, arrived to Jennifer and Stuckey's home. Officer Adams and Officer Michael Hollingsworth also were at the scene shortly after Arthur's body was discovered in the street. Officer Daniels testified that Stuckey admitted to shooting Arthur or "his brother-in-law" after Arthur lunged at him twice. However, Officers Daniels and Hollingsworth testified that there were no scrapes or bruises on Stuckey. Officer Daniels also testified that he saw a shotgun in Stuckey's bedroom closet.

¶7.     Stuckey was arrested and taken to the Greenville Police Department. Stuckey signed a *Miranda* waiver and informed Lieutenant Louis White, formerly with the Greenville Police Department, that he shot Arthur because he "lunged at him twice." Investigator Tammie Hudson also was present during Stuckey's interrogation. Stuckey stated to Lieutenant White and Investigator Hudson that he "shot the [s***] out of Arthur."

¶8.     Following a trial, Stuckey was convicted of second-degree murder with a firearm

3

enhancement and sentenced to forty years in the custody of the Mississippi Department of Corrections (MDOC) and five years for the firearm enhancement, to run consecutively. Stuckey filed a motion for a JNOV, or for a new trial, which the trial court denied. Stuckey timely appeals.

## STANDARD OF REVIEW

¶9.     "Our review of the denial of a motion for directed verdict and a motion for a JNOV is under the same [de novo] standard of review, a challenge to the legal sufficiency of the evidence." *See Bradford v. State*, 102 So. 3d 312, 314-15 (¶6) (Miss. Ct. App. 2012) (citation omitted). "On appeal, a challenge to the sufficiency of the evidence is reviewed on the last occasion that the trial court ruled on the sufficiency of the evidence." *Id*. at 314 (¶6) (citing *McClain v. State*, 625 So. 2d 774, 778 (Miss.1993)). In this case, the last occasion on which the trial court considered the legal sufficiency of the evidence was in ruling on Stuckey's JNOV motion.

¶10.     Further, "[i]n reviewing a challenge to the legal sufficiency of the evidence, this Court considers all of the evidence in the light most favorable to the prosecution and accepts all evidence supporting the verdict as true." *Id*. at (¶7) (citation omitted).

## DISCUSSION

¶11.     Stuckey asserts that he should have been convicted of manslaughter under the theory of "imperfect self-defense." As a result, he argues that the evidence was not legally sufficient to render a second-degree murder conviction.

¶12.     Stuckey was convicted of second-degree murder under Mississippi Code Annotated

4

section 97-3-19(1)(b) (Rev. 2014). This section states in part:

> (1) The killing of a human being without the authority of law by any means or in any manner shall be murder in the following cases:

> > (b) When done in the commission of an act eminently dangerous to others and evincing a depraved heart, regardless of human life, although without any premeditated design to effect the death of any particular individual, shall be second-degree murder[.]

¶13. Stuckey also was convicted under Mississippi Code Annotated section 97-37-37(1) (Rev. 2014). This section reads:

> (1) Except to the extent that a greater minimum sentence is otherwise provided by any other provision of law, any person who uses or displays a firearm during the commission of any felony shall, in addition to the punishment provided for such felony, be sentenced to an additional term of imprisonment in the custody of the Department of Corrections of five (5) years, which sentence shall not be reduced or suspended.

¶14. The Mississippi Supreme Court has held that "under the theory of imperfect self-defense, an intentional killing may be considered manslaughter if done without malice but under a bona fide (but unfounded) belief that it was necessary to prevent death or great bodily harm." *Brown v. State*, 222 So. 3d 302, 307 (¶21) (Miss. 2017). This Court has held that "[t]he chief distinction between murder and manslaughter is the presence of deliberation and malice in murder and its absence in manslaughter." *Hunter v. State*, 187 So. 3d 674, 677 (¶10) (Miss. Ct. App. 2016).

¶15. The following is an excerpt from Stuckey's cross-examination:

> Q: Mr. Stuckey, I just have a few more questions to ask, okay? You said that Mr. Triplett pushed you, right?

> A: He pushed me more than one time.

5

Q.    He pushed you more than one time. Were you scared when he pushed you?

A:    No. I haven't met a man I was scare of. I met mens I didn't want to mess with.

Q:    So you wasn't scared of him when he pushed you?

A:    No.

¶16.    Stuckey's testimony demonstrates that he could not have been found not guilty under the theory of "imperfect self-defense." Stuckey was not afraid of Arthur and did not believe Arthur would cause serious bodily injury. Therefore, this argument fails.

¶17.    Furthermore, the Mississippi Supreme Court stated that under a charge of second-degree murder, "[t]o demonstrate no regard for another's life is the basic requirement of guilt." *Dowda v. State*, 776 So. 2d 714, 716 (¶7) (Miss. Ct. App. 2000). Stuckey lied to Sharnika when she arrived at the scene. Several witnesses testified that Stuckey did not seem remorseful of his actions. Moreover, Stuckey's demeanor after the shooting was described as calm. Stuckey testified that he went to the bedroom to retrieve his shotgun because Arthur kept pushing him. However, Stuckey exhibited no bruises from their altercation, and no weapon ever was recovered from Arthur's person.

¶18.    The State presented evidence that Arthur was shot and killed with a 20-gauge shotgun through Dr. John Davis's testimony and photographs of Arthur's injuries. Dr. John Davis, Deputy Chief Medical Examiner, testified that Arthur's manner of death was ruled as a homicide from a gunshot wound to the chest. Further, Chad Suggs, a forensic scientist with the Mississippi Forensic Lab, testified that Stuckey tested positive for gunshot residue. Mark

Boackle, a forensic pathologist specializing in firearms, testified that the pellets found in Arthur's chest came from a 20-gauge shotgun.

¶19. Stuckey maintains that he was in a physical altercation with the victim and was fearful of bodily injury; however, testimony presented at trial refuted that claim. The officers and investigators at the scene of the crime reported that the house did not look disturbed–aside from a blood trail leading from the inside to the outside of the home. Officer Hollingsworth, Lieutenant White, and Investigator Hudson testified that Stuckey informed them that Stuckey shot Arthur after the victim pushed him two or three times. Stuckey testified that he believed he was loading blank ammunition into the shotgun; however, Investigator Hudson testified there were no blanks found while recovering ammunition from the home.

¶20. Furthermore, the jury was instructed on manslaughter, first-degree murder, and second-degree murder. This Court previously has held that "the determination of a defendant's mental culpability is an issue properly resolved by the jury." *Hunter*, 187 So. 3d at 677 (¶10) (citing *Shumpert v. State*, 935 So. 2d 962, 967 (¶14) (Miss. 2006)). The jury considered all of the evidence and testimony presented and determined that Stuckey acted neither in the heat of passion, nor committed imperfect self-defense.

¶21. Viewing the evidence in the light most favorable to the prosecution, we find that a rational juror could have concluded that all of the elements of second-degree murder were satisfied.

¶22. **AFFIRMED.**

**LEE, C.J., IRVING AND GRIFFIS, P.JJ., BARNES, CARLTON, FAIR, WILSON, GREENLEE AND TINDELL, JJ., CONCUR.**